

# Lloyd's Certificate

**This Insurance** is effected with certain Underwriters at Lloyd's, London.

**This Certificate** is issued in accordance with the limited authorization granted to the Correspondent by certain Underwriters at Lloyd's, London whose syndicate numbers and the proportions underwritten by them can be ascertained from the office of the said Correspondent (such Underwriters being hereinafter called "Underwriters") and in consideration of the premium specified herein, Underwriters hereby bind themselves severally and not jointly, each for his own part and not one for another, their Executors and Administrators.

**The Assured** is requested to read this Certificate, and if it is not correct, return it immediately to the Correspondent for appropriate alteration.

All inquiries regarding this Certificate should be addressed to the following Correspondent:

Hanleigh Management, Inc.
50 Tice Blvd., Suite 122,
Woodcliff Lake, NJ  07677

SLC-3 (USA) NMA2868 (24/08/00)  Form approved by Lloyd's Market Association

## CERTIFICATE PROVISIONS

1. **Signature Required.** This Certificate shall not be valid unless signed by the Correspondent on the attached Declaration Page.

2. **Correspondent Not Insurer.** The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those Underwriters at Lloyd's, London whose syndicate numbers can be ascertained as hereinbefore set forth. As used in this Certificate "Underwriters" shall be deemed to include incorporated as well as unincorporated persons or entities that are Underwriters at Lloyd's, London.

3. **Cancellation.** If this Certificate provides for cancellation and this Certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

4. **Service of Suit.** It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon the firm or person named in item 6 of the attached Declaration Page, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.
The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.
Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-mentioned as the person to whom the said officer is authorized to mail such process or a true copy thereof.

5. **Assignment.** This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

6. **Attached Conditions Incorporated.** This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached and endorsed, all of which are to be considered as incorporated herein.

7. **Short Rate Cancellation.** If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation.

**Short Rate Cancellation Table For Term of One Year.**

| Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 5% | 66 - 69 | 29% | 154 - 156 | 53% | 256 - 260 | 77% |
| 2 | 6 | 70 - 73 | 30 | 157 - 160 | 54 | 261 - 264 | 78 |
| 3 - 4 | 7 | 74 - 76 | 31 | 161 - 164 | 55 | 265 - 269 | 79 |
| 5 - 6 | 8 | 77 - 80 | 32 | 165 - 167 | 56 | 270 - 273 ( 9 mos.) | 80 |
| 7 - 8 | 9 | 81 - 83 | 33 | 168 - 171 | 57 | 274 - 278 | 81 |
| 9 - 10 | 10 | 84 - 87 | 34 | 172 - 175 | 58 | 279 - 282 | 82 |
| 11 - 12 | 11 | 88 - 91 ( 3 mos.) | 35 | 176 - 178 | 59 | 283 - 287 | 83 |
| 13 - 14 | 12 | 92 - 94 | 36 | 179 - 182 ( 6 mos.) | 60 | 288 - 291 | 84 |
| 15 - 16 | 13 | 95 - 98 | 37 | 183 - 187 | 61 | 292 - 296 | 85 |
| 17 - 18 | 14 | 99 - 102 | 38 | 188 - 191 | 62 | 297 - 301 | 86 |
| 19 - 20 | 15 | 103 - 105 | 39 | 192 - 196 | 63 | 302 - 305 ( 10 mos.) | 87 |
| 21 - 22 | 16 | 106 - 109 | 40 | 197 - 200 | 64 | 306 - 310 | 88 |
| 23 - 25 | 17 | 110 - 113 | 41 | 201 - 205 | 65 | 311 - 314 | 89 |
| 26 - 29 | 18 | 114 - 116 | 42 | 206 - 209 | 66 | 315 - 319 | 90 |
| 30 - 32 ( 1 mos.) | 19 | 117 - 120 | 43 | 210 - 214 ( 7 mos.) | 67 | 320 - 323 | 91 |
| 33 - 36 | 20 | 121 - 124 ( 4 mos.) | 44 | 215 - 218 | 68 | 324 - 328 | 92 |
| 37 - 40 | 21 | 125 - 127 | 45 | 219 - 223 | 69 | 329 - 332 | 93 |
| 41 - 43 | 22 | 128 - 131 | 46 | 224 - 228 | 70 | 333 - 337 ( 11 mos.) | 94 |
| 44 - 47 | 23 | 132 - 135 | 47 | 229 - 232 | 71 | 338 - 342 | 95 |
| 48 - 51 | 24 | 136 - 138 | 48 | 233 - 237 | 72 | 343 - 346 | 96 |
| 52 - 54 | 25 | 139 - 142 | 49 | 238 - 241 | 73 | 347 - 351 | 97 |
| 55 - 58 | 26 | 143 - 146 | 50 | 242 - 246 ( 8 mos.) | 74 | 352 - 355 | 98 |
| 59 - 62 ( 2 mos.) | 27 | 147 - 149 | 51 | 247 - 250 | 75 | 356 - 360 | 99 |
| 63 - 65 | 28 | 150 - 153 ( 5 mos.) | 52 | 251 - 255 | 76 | 361 - 365 ( 12 mos.) | 100 |

Rules applicable to insurance with terms less than or more than one year:

A. If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for insurance written for a term of one year.

B. If insurance has been in force for more than one year:

    1. Determine full annual premium as for insurance written for a term of one year.

    2. Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the policy was originally written.

    3. Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force.

The insurer which has issued this insurance is not licensed by the Pennsylvania Insurance Department and is subject to limited regulation. This insurance is NOT covered by the Pennsylvania Property and Casualty Insurance Guaranty Association.

---

**This Declaration Page is attached to and forms part of certificate provisions (Form SLC-3 USA).**

| Previous No. | Authority Ref. No. ▉▉▉▉ | Certificate No. ▉▉▉▉ |
|---|---|---|

**1**

**NAME and ADDRESS** of the **ASSURED:** Thrivest Specialty Funding III, LLC
2 Penn Center Plaza, 1500 JFK Blvd., Suite 220, Philadelphia, PA 19102

**NAME and ADDRESS** of the **INSURED:** Adrian Peterson
▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

**2** Effective from: June 22, 2016 to March 22, 2017 both days at 12:01 a.m. standard time.

**3** Insurance is effected with insurers shown on the attached Security List.

**4** Interest and Sum Insured:

**Accident & Sickness Permanent Total Disability**
**$3,000,000 Lump Sum, after 12 consecutive months of disability.**

Aggregate Limit: $3,000,000

**5** Premium    Due: June 22, 2016

| | |
|---|---|
| Premium | 121,800.00 |
| Policy Fee | $200.00 |
| Stamping Fee | $25.00 |
| Surplus Lines Tax | $3,654.00 |
| Total Due | $125,679.00 |

**6** Service of Suit may be made upon:
Mendes & Mount  750 Seventh Avenue  New York, New York 10019-6829  USA

**7** Special Conditions
Excluding any disorder of, or injury to, the spine, its intervertebral discs, nerve roots, or supporting musculature.
To follow the terms conditions, limitations and exclusions of the policy form or as endorsed hereon.
Loss of Value Threshold of $4m a year over 3 years, contract total $12,000,000. Sum insured up to $3,000,000

**8** List of Forms
LL-AH-12980 Excl Rid, SLC-3(USA)NMA2868, DecPage- US, Lloyd's Security, HanLOVwording, HanLOVSched, JHA (W&T) (A), LMA5020, LSW1210, LMA3100HAN, LMA5021, LSW1001(Insurance), NMA1331, LSW1135b, Application

**9** Information
. Date of Birth: ▉▉▉▉▉▉▉▉
. Application dated, June 22, 2016               ,attached hereto and made part of the Certificate.
. Declaration of Health dated, NA               ,attached hereto and made part of the Certificate.
. Occupation: NFL Player

Dated: August 24, 2016                    **HANLEIGH MANAGEMENT, INC.**

Hanleigh Management, Inc.
50 Tice Blvd., Suite 122,
Woodcliff Lake, NJ 07677

By: Graham Southall, Vice President

## SCHEDULE

| | |
|---|---|
| Policy No: | ████████████ |
| Name of **Insured**: | Adrian Peterson |
| Address of **Insured**: | ████████████████ ████████████████ |
| Intended Occupation of **Insured**: | Professional American Football Player |
| Date of written Application/Proposal Form: | June 22, 2016 |
| Policy Period: | From **June 22, 2016** to **March 22, 2017**, Both days at 00.01 hours Local Standard Time at the address of the **Insured** and such further period or periods as may be mutually agreed in writing. Or date the Insured signs a contract with any Professional American Football League Team, whichever the sooner |
| Territorial Limits: | Worldwide |
| Conditions: | Excluding any disorder of, or injury to, the spine, its intervertebral discs, nerve roots, or supporting musculature. |

## SCHEDULE OF COMPENSATION:

| | |
|---|---|
| Limit of Indemnity: | Section A) Up to  USD 3,000,000<br>Section B) Up to USD 3,000,000 |
| Rehabilitation Period: | 4 games |
| Elimination Period: | Section A) 12 Months |

Premium:

| | |
|---|---|
| Base Premium | $121,800.00 |
| Policy Fee | $    200.00 |
| PA Surplus Lines Tax @ 3% | $  3,654.00 |
| PA Stamping Fee | $      25.00 |
| **Total Due:** | **$125,679.00** |

| | |
|---|---|
| Premium Due Date: | June 22, 2016 |



## PROFESSIONAL ATHLETE'S LOSS OF VALUE INSURANCE

We, the underwriting members of the syndicates whose definitive numbers and proportions are shown in the Table attached to this Policy (hereinafter the "Insurers"), agree to pay the benefits of this Policy, subject to its terms, to the **Insured** as named in the Schedule in the manner and to the extent provided in this Policy.

This Policy is issued in consideration of and in reliance upon the application   (hereinafter the "Proposal") and the payment of the required premium. The Proposal, Policy, Schedule and Endorsements, if any, constitute the entire contract. A copy of the Proposal is attached to and made part of this Policy.

Words in bold print in this Policy have special meaning, as defined in the DEFINITIONS Section of this Policy

<u>PART ONE-INSURING AGREEMENT</u>

This Insurance is to indemnify the Insured:

## <u>Section A) – Permanent Total Disability</u>

If the Insured suffers a Permanent Total Disability occurring during the period of this insurance solely and directly as a result of **Injury** or **Illness**, subject always to the Elimination Period being exhausted and the Terms, Warranties, Conditions and Exclusions contained herein or endorsed hereon:

## <u>Section B) – Loss Of Value</u>

For his **Aggregate Ascertained Loss**, up to, but not exceeding the Limit of Indemnity, should the Insured not receive an **Offer** from a Professional American Football Team that Totals USD 12,000,000 or more of **Compensation** based on a 3 year contract (USD 4,000,000 per year irrespective of whether the contract is paid evenly over the number of years, for the purposes of this policy it is deemed to be paid evenly.) * *or pro rata in the event of a short or longer duration contract.*

Solely and directly as a result of Injury or Illness occurring during the period of Insurance, subject always to the terms, Warranties, Conditions and Exclusions contained herein or endorsed hereon

*\*Example, based on the above USD 4,000,000 per year, should the insured sign a contract of:-*

*USD 9,000,000 over 3 years - USD 3,000,000 per year, the policy would pay USD 1,000,000 per year of contract signed. Total payable USD 3,000,000*

*USD 6,000,000 over 2 years - USD 3,000,000 per year, the policy would pay USD 1,000,000 per year of contract signed. Total payable USD 2,000,000*

*USD 3,000,000 over 1 year - USD 3,000,000 per year, the policy would pay USD 1,000,000 per year of contract signed. Total payable USD 1,000,000*

*Alternatively, should the insured sign a contract of:-*

*USD 6,000,000 over 3 years - USD 2,000,000 per year, although the shortfall between the expected and actual contract is USD 2,000,000 per year, the policy will only pay USD 1,000,000 per year so the total payable is USD 3,000,000.*

*USD 6,000,000 over 1 year – There is no shortfall as the contract offer is greater than the USD 4,000,000 per year so no benefit will be payable.*

***In no event can the Insured make a claim under both Sections A & B of this policy. The maximum claim payable therefore being limited to USD** 3,000,000 **for the policy period***

## <u>Section C) – Accidental Death</u> – Not Applicable

PART TWO - DEFINITIONS

For the purposes of this Insurance:

1. **Insured**
   Shall mean the person identified in the Schedule as such.

2. **Aggregate Ascertained Loss**
   Means the difference between the **Offer** as stated in the insuring agreement and the actual **Compensation** included in the largest **Offer** made by a **Professional American Football Team** or pro rata if a shorter or longer term. Noting the maximum payable is dependent up on the length in years of the Actual **Offer.**

   It is understood and agreed that there can be no claim under this Insurance with respect to Section B if the Compensation made by a Professional American football team is greater than or equal to the **Offer**, as stated in the insuring agreement.

   It is further understood and agreed that there can only be a valid and collectible claim under this Insurance if the **Offer** made by a Professional American Football Team is lower than the **Offer**, as stated in the insuring agreement. The amount payable will be dependent upon length in years of the Actual **Offer**.

3. **Injury**
   With respect to Interest under Section A, Accidental Bodily Injury sustained by the **Insured** during the period of this Insurance which requires the **Insured** to receive medical treatment by a **Physician**, and in the opinion of the **Physician**, the **Insured** is entirely prevented from engaging in his Occupation ever again.

   With respect to Interest under Section B, Accidental bodily injury sustained by the **Insured** during the period of this Insurance which requires:

   *i)*      the **Insured** to be placed on the official NFL **Injured Reserve list,**
   *ii)*      medical treatment by a **Physician,**
   *iii)*      in the opinion of the **Physician**, the **Insured's** Injury has negatively affected the **Insured's** skills permanently as a Professional American Football Player

4. **Illness**
   With respect to Interest under Section A, Illness first manifested in the **Insured** during the period of this Insurance which requires the Insured to receive medical treatment by a **Physician**, and in the opinion of the **Physician**, the Insured is entirely prevented from engaging in his Occupation ever again

   With respect to Interest under Section B, Illness first manifested in the **Insured** during the period of this Insurance which requires:

   *i)*      the **Insured** to be placed on the official NFL **Injured Reserve list,**
   *ii)*      medical treatment by a **Physician,**
   *iii)*      in the opinion of the **Physician**, the **Insured's** Illness has negatively affected the **Insured's** skills permanently as a Professional American Football Player

5. **Accidental Death**
Means Accidental Bodily Injury arising from an accident during the policy period, which shall solely and independently of any other cause occasion the death of the Insured within twelve calendar months from the date of the accident.

6. **Injured Reserve List**
Means the official NFL injury list as defined by the NFL

7. **Physician**
Means a licensed healthcare practitioner, other than the Insured, or a member of the Insured's immediate family, providing services or treatment within the scope of his or her license

8. **Compensation**
Means money, property, investments, loans, options or anything else of value, whether or not in cash, regardless of when paid, including, but not limited to, **Salary** and **Signing Bonus** included in an **Offer** made by a  Professional American Football Team, including **Performance**, **Roster** and **Reporting Bonuses**

9. **Salary**
Means **Compensation**, regardless of when paid, for playing Football for a **Professional American Football Team**, excluding **Signing**, **Reporting**, **Roster** and **Performance Bonuses**

10. **Signing Bonus**
Means Compensation, regardless of when paid, for signing a contract with a **Professional American Football Team** or any other activity not contingent upon the Insured attaining or surpassing a particular level of performance

11. **Reporting Bonus**
Means Compensation, for reporting to training camp or any other activity not contingent upon the Insured attaining or surpassing a particular Level of performance

12. **Roster Bonus**
Means Compensation, for making the roster or any other activity not contingent upon the Insured attaining or surpassing a particular level of performance

13. **Performance Bonus**
Means Compensation, contingent upon the Insured attaining or surpassing a particular level of performance

14. **Offer**
Means a proposal to play Football for a **Professional American Football Team** made to the Insured or his agent/ representative within the policy period or within 15 months thereafter and being after the date of **Injury** or **Manifestation**  of Illness (being the subject of a claim) whether signed and agreed by the Insured  or otherwise.

In the event that an **Offer** is made that is subject to the completion of a Professional American Football Team Physical;

    i)      If that physical was subsequently failed, then this will not count as an **Offer** according to the terms of the policy

    ii)     If the **Professional American Football Team** then reduces the **Offer** to the player solely due to the findings of the physical, then the new lower **Offer** will replace the original in all matters relating to the policy.

15. **Professional American Football Team**
Means a recognized Professional American Football Team

16. **Permanent Total Disablement**
shall mean that the **Insured** has suffered continuous **Total Disablement** for the **Waiting Period** stated in the Schedule, and that as a result of the Accidental **Bodily Injury or Illness or Disease** giving rise to the **Total Disablement, the Insured** has no likely hope of improvement, sufficient to **Participate** ever again in his occupation as stated in the Schedule

17. **Waiting Period**
Shall mean the continuous period of time stated in the Schedule during which the **Insured** must be **Totally Disabled** before any claim for **Permanent Total Disablement** will be considered. No covered claim shall exist and no benefit shall be due or payable for **Permanent Total Disablement** unless and until the **Insured** has suffered **Total Disablement** for the continuous period as stated in the Schedule, culminating in **Permanent Total Disablement**

18. **Manifest,** or **Manifestation**
Shall mean the date when an **Illness or Disease** is reasonably capable of diagnosis by a Physician

19. **Participate, Participation** or **Participating**
Shall mean that the **Insured** is on the active roster of a professional sports team for which the **Insured** is contractually obligated to play, and/or is dressed, and/or is available and/or is physically able to practice or play for such team.

PART THREE - EXCLUSIONS

This Policy does not cover disability wholly or partially, directly or indirectly caused by, contributed to by or aggravated by:

1. War or any act of war, whether war is declared or not;

2. Suicide, self-destruction, attempted suicide or self destruction, or intentionally self-inflicted injury, while sane or insane;

3. The **Insured's** own criminal or felonious act;

4. The **Insured;**
(a) Being under the influence of alcohol, as defined by the motor vehicle laws of the state/province/country in which this Policy was delivered;

(b) Being under the influence of drugs or narcotics that are not lawfully available, unless prescribed for the **Insured** by a qualified **Physician;**

(c) Using any drugs or substances in violation of the rules or regulations of the governing body of the sport in which the **Insured** plays;

5.    The **Insured's** use of performance enhancing substances, including but not limited to anabolic steroids, stimulants and corticosteroids, regardless of whether or not prescribed by a qualified health care practitioner;

6.    Any practices or activities excluded by the **Insured's** professional sports contract in connection with his occupation as stated in the Schedule;

7.    Conditions of psychotic, psychoneurotic or epileptic origin;

8.    Osteoarthritis, arthritis or any other degenerative process of the joints, bones, tendons or ligaments.

9.    The Insured  not receiving an offer from a Professional American Football Team that totals **USD 20,000,000** or more of Compensation based on a  **5 year** contract, or pro rata if a short term  for any reason, other than due to Injury or Illness as defined herein.

10.    The Insured not signing a contract with a Professional American Football Team for any reason other than due to **Death** or **Permanent Total Disability** as defined herein

11.    The Insured spending time in a drug or alcohol rehabilitation clinic and / or program, whether as an inpatient or outpatient

12.    a) ionizing radiations or contamination by radioactivity from any nuclear waste from the combustion of nuclear fuel, however caused

b) The radioactive, toxic explosive or other hazardous properties of any nuclear assembly or nuclear component thereof, however caused

13.    This Insurance does not cover any loss directly or indirectly arising out of, contributed to by, or resulting from the accidental release or actual, threatened, feared or perceived use of any biological, chemical, radioactive or nuclear agent, material, device or weapon.

14.    The Insured is not placed on the **Injured Reserve List** in respect of Section B only

15.    Death as a result of Illness

## PART FOUR - CONDITIONS AND OTHER PROVISIONS

1.   If a claim is filed under this Insurance Underwriters reserve the right to require the Insured to be examined by Underwriters Physicians. The Insured agrees to cooperate and to submit to all reasonable medical tests Underwriters'
physicians may require.

2.   It is understood and agreed that this Insurance is subject to receipt and approval by Underwriters of a copy of the Insured's most recent team physical, a satisfactory Medical History Questionnaire completed by the Insured   and premium payment within 30 days from inception. These documents will attach to and form part of this Insurance.

3.   Any word or expression to which a specific meaning has been attached in any part of this Insurance shall bear such meaning wherever it may appear.

4.   Any fraud, misstatement or concealment in the information provided to Underwriters or in the making of a claim or otherwise howsoever, shall render all claims hereunder forfeit.

5.    The Insured shall at all times do and concur in doing all things necessary to avoid or diminish a loss under this Insurance.

6.    The Insured shall observe and fulfill the terms and conditions contained herein or endorsed hereon.

7.   It is understood and agreed that no other insurance shall be affected by the Insured to protect the interest insured hereunder without prior advice to Underwriters hereon, In the event that such other insurance is effected Underwriters reserve the right to amend the terms and conditions of this Insurance.

8.   The premium and any expense incurred in the formulation of a claim hereunder shall not be a recoverable item.

9.   This Insurance maybe cancelled at any time by the Insured by writing to their insurance agent who effected this Insurance. The Insured will then be entitled to the pro rata return of the paid premium based on season and offseason, subject to the Minimum Earned Premium, provided no claim has been made during the
period of this Insurance.

10.   Underwriters reserve the right to pursue an action for recovery from any party, whether before or after payment of a loss, at their sole discretion and in the name of the Insured or otherwise. In the event of any payment under this Insurance, Underwriters shall be subrogated to the extent of such payment to all the Insured's rights of recovery and the Insured shall execute all papers required and shall do everything that may be necessary to secure such rights.

11.   This Insurance may not be assigned in whole or in part without the written consent of Underwriters.

12.   It is understood and agreed that there can be no claim under this Insurance if the Insured   receives an Offer from a  Professional American Football Team that totals **USD 20,000,000** or more of Compensation based on a **5 year** contract, or pro rata if a short term contract signed and he signs a new contract with a  Professional American Football Team

13.    It is understood and agreed that once a Professional American Football Team makes an Offer, it will be considered a valid Offer under this Insurance, even if the Offer is subsequently rejected or withdrawn or the Offer expires.

14    The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions. The subscribing insurers are not responsible for the subscription of any co-subscribing Underwriter who for any reason doesn't satisfy all or part of its obligations.

Whenever or wherever reference is made to "insurers in this condition, the same shall be deemed to read "Underwriters

15.    If there are differences arising out of this Insurance and the Insured and Underwriters agree to arbitrate the differences, all differences arising out of this Insurance shall be referred to the decision of an Arbitrator to be appointed in writing by the parties in difference or if they cannot agree upon a single Arbitrator to the decision of two Arbitrators, one to be appointed in writing by each of the parties within 30 days after having been required in writing to do so by either of the parties. The two Arbitrators shall appoint an Umpire who shall sit with the Arbitrators and preside at their meetings. If the Arbitrators do not agree within 60 days of their appointment then the Umpire shall make the award within 60 days.

If the parties agree on an Arbitrator the cost will be split equally between the parties. If the parties cannot agree on a single Arbitrator then each party will be responsible for the cost of the Arbitrator they have selected and will split equally the cost of the Umpire.

# JHA War, Terrorism & Mass Destruction Exclusion



---

**CERTIFICATE NUMBER:** ▮▮▮▮▮▮▮▮▮

---

Notwithstanding any provision to the contrary within this *insurance*, or any endorsement thereto, it is agreed that this *insurance* excludes any loss or expense of whatsoever nature directly or indirectly arising out of, contributed to, caused by, resulting from, or in connection with any of the following regardless of any other cause or event contributing concurrently or in any other sequence to the loss or expense;

1. War, hostilities or warlike operations (whether war be declared or not),
2. Invasion,
3. Act of an enemy foreign to the nationality of the insured person or the country in, or over, which the act occurs,
4. Civil war,
5. Riot,
6. Rebellion,
7. Insurrection,
8. Revolution,
9. Overthrow of the legally constituted government,
10. Civil commotion assuming the proportions of, or amounting to, an uprising,
11. Military or usurped power,
12. Explosions of war weapons,
13. Utilisation of Nuclear, Chemical or Biological weapons of mass destruction howsoever these may be distributed or combined,
14. Murder or Assault subsequently proved beyond reasonable doubt to have been the act of agents of a state foreign to the nationality of the insured person whether war be declared with that state or not,
15. Terrorist activity.

For the purpose of this exclusion;

i) Terrorist activity means an act, or acts, of any person, or group(s) of persons, committed for political, religious, ideological or similar purposes with the intention to influence any government and/or to put the public, or any section of the public, in fear. Terrorist activity can include, but not be limited to, the actual use of force or violence and/or the threat of such use. Furthermore, the perpetrators of terrorist activity can either be acting alone, or on behalf of, or in connection with any organisation(s) or governments(s).

ii) Utilisation of Nuclear weapons of mass destruction means the use of any explosive nuclear weapon or device or the emission, discharge, dispersal, release or escape of fissile material emitting a level of radioactivity capable of causing incapacitating disablement or death amongst people or animals.

# Nuclear/Radioactive Exclusion Clause



**CERTIFICATE NUMBER:** ▮▮▮▮▮▮▮▮▮▮▮

This insurance does not cover claims in any way caused or contributed to by nuclear reaction, nuclear radiation or radioactive contamination

# Service of Suit Clause (USA)



---

**CERTIFICATE NUMBER:** ███████████

---

This Service of Suit Clause will not be read to conflict with or override the obligations of the parties to arbitrate their disputes as provided for in any Arbitration provision within this Policy.  This Clause is intended as an aid to compelling arbitration or enforcing such arbitration or arbitral award, not as an alternative to such Arbitration provision for resolving disputes arising out of this contract of insurance (or reinsurance).

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States.  Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.

It is further agreed that service of process in such suit may be made upon

Mendes & Mount  750 Seventh Avenue  New York, New York 10019-6829  USA

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to give a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

# Several Liberty Notice



**CERTIFICATE NUMBER:** ███████████

The subscribing insurers' obligations under contracts of insurance to which they subscribe are several and not joint and are limited solely to the extent of their individual subscriptions.  The subscribing insurers are not responsible for the subscription of any co-subscribing insurer who for any reason does not satisfy all or part of its obligations.

# Applicable Law (USA)



**CERTIFICATE NUMBER:** ███████████

This Insurance shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit Clause (U.S.A.).

14/09/2005
Form approved by Lloyd's Market Association

# Cancellation Clause



**CERTIFICATE NUMBER:** ▬▬▬▬▬▬▬

NOTWITHSTANDING anything contained in this Insurance to the contrary this Insurance may be cancelled by the Assured at any time by written notice or by surrendering of this Contract of Insurance.  This Insurance may also be cancelled by or on behalf of the Underwriters by delivering to the Assured or by mailing to the Assured, Electronically, by registered, certified or other first class mail, at the Assured's address as shown in this Insurance, written notice stating when, not less than the longer of Ten days or as filing state statute provides, thereafter, the cancellation shall be effective.  The mailing of notice as aforesaid shall be sufficient proof of notice and this Insurance shall terminate at the date and hour specified in such notice.

If this Insurance shall be cancelled by the Assured the Underwriters shall retain the customary short rate proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the Earned Premium hereon or the customary short rate proportion of any Minimum Premium stipulated herein whichever is the greater.

If this Insurance shall be cancelled by or on behalf of the Underwriters the Underwriters shall retain the pro rata proportion of the premium hereon, except that if this Insurance is on an adjustable basis the Underwriters shall receive the Earned Premium hereon or the pro rata proportion of any Minimum Premium stipulated herein whichever is the greater.

Payment or tender of any Unearned Premium by the Underwriters shall not be a condition precedent to the effectiveness of Cancellation but such payment shall be made as soon as practicable.

If the period of limitation relating to the giving of notice is prohibited or made void by any law controlling the construction thereof, such period shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED**

# Sanction Limitation and Exclusion Clause



**CERTIFICATE NUMBER:** ████████████

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

This rider takes effect on   6/22/2016, 12:01 a.m. Local Standard Time at        Philadelphia, PA        and expires concurrently with the Certificate and is subject to all of the provisions, definitions, limitations and conditions of the Certificate not inconsistent herewith.

Signed by Hanleigh Management, Inc.,  Lloyd's Correspondent

Graham Southall,  Lead Underwriter

# Exclusionary Endorsement



---

**CERTIFICATE NUMBER:** ███████████

---

It is hereby agreed and acknowledged that the above numbered Certificate shall:

Excluding any disorder of, or injury to, the spine, its intervertebral discs, nerve roots, or supporting musculature.

---

This rider takes effect on 6/22/2016 , 12:01 a.m. Local Standard Time at Philadelphia, PA     , and expires concurrently with the Certificate and is subject to all of the provisions, definitions, limitations and conditions of the Certificate not inconsistent herewith.

Signed by Hanleigh Management, Inc.,  Lloyd's Correspondent

Graham Southall,  Lead Underwriter



# Lloyd's Security

**CERTIFICATE NUMBER:** ▮▮▮▮▮▮▮▮

Underwritten by certain Underwriters at Lloyd's

# Hanleigh

# SPORTS INSURANCE PROPOSAL FORM
### (All questions must be answered in ink)

**Hanleigh Management Inc.**

RECEIVED

JUL 2 5 2016

Hanleigh Management, Inc., Hanleigh General Agency, Inc.,
50 Tice Blvd., Suite 122, Woodcliff Lake, New Jersey 07677
Phone: (201) 505-1050 *or* (800) 443-2922 / Facsimile:  (201) 505-1051
*www.hanleighinsurance.com*

**SECTION I**

1. Proposed Insured's Name:   Adrian Peterson

   Residence: ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

   | City: ▮▮▮▮▮▮▮ | State: ▮▮▮ | Zip: ▮▮▮▮▮ |

   Mailing Address: (if different from the above)

   | City: | State: | Zip: |

   | Date of Birth: ▮▮▮▮▮▮ | Place of Birth: ▮▮▮▮ |

   | Sex: ▮▮▮▮ | Social Security Number: ▮▮▮▮▮▮▮▮▮ |

2. Proposed Insured's Occupation:   Professional Athlete

   Participate in (Name of Sport)   Football        As a    (Professional)

   Collegian

   Other (Please state)

   Name of Team:   Minnesota Vikings

   Position      Running Bank

   *(The remaining questions of no. 2 are to be completed by Professional Athletes Only)*

   Name of Employer:   Minnesota Vikings Football, LLC

   Business Address:   9520 Viking Drive, Eden Prairie, MN 55344

   Date of expiry of the current contract (if applicable):   February 28, 2016

   | Are you actively working in your occupation as a | Player | ☑ Yes  ☐ No |
   | How long have you been working as a professional | Player | Years  9 |

3. Name of Proposed Owner:   Thrivest Specialty Funding III, LLC

   Address of Owner:   2 Penn Center Plaza, 1500 JFK Blvd. Suite 220, Philadelphia, PA 19102

   Relationship to Proposed Insured:   Lender

**SECTION II**

Do you participate in any of the following activities?

(a) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓   ☐ Yes   ☑ No   ▓▓▓▓▓▓▓▓▓▓▓▓▓

_____

_____

(b) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓   ☐ Yes   ☑ No   ▓▓▓▓ please give details

_____

_____

(c) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓   ☐ Yes   ☑ No   if Yes - please give details

_____

_____

(d) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓   ☐ Yes   ☑ No   ▓▓▓▓▓▓▓▓▓▓

_____

_____

(e) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ by your club contract   ☐ Yes   ☑ No   if Yes - please give details

_____

_____

# PERSONAL MEDICAL HISTORY FORM
### (All questions must be answered in ink)

**IN THE EVENT THAT ANY QUESTION HAS NOT BEEN ANSWERED SATISFACTORILY, UNDERWRITERS RESERVE THE RIGHT TO EITHER RETURN THIS FORM TO THE APPLICANT FOR THE ANSWERS TO BE COMPLETED, OR TO IMPOSE ANY RESTRICTION, OR PRE-EXISITING CONDITIONS EXCLUSION ON THE COVERAGE REQUIRED UNTIL SUCH TIME AS THE APPLICATION HAS BEEN SATISFACTORILY COMPLETED.**

**SECTION I**

1. ███████████████████████████████████████████████
   ███████████

   _____
   _____
   _____

2. ███████████████████████████████████████████████
   ████████████████████████

   _____
   _____

3. ███████████████████████████████████████████████
   ███████████████████████████████████████
   ████████████████

   _____
   _____
   _____

**SECTION II**

1. ███████████████████████████████████████████████
   ██████████ 6588 Viking Drive Eden Prairie, NH 55344
   ███████████████████████████████████████████████
   ███████████████████████████

   _____

2. ███████████████████████████████████████████████
   ███████████████

3. ███████████████████████████████████████████████
   ████████████████████████████████████████
   ████████████████████████████████████████

   Physician Name: _____
   █████████████████████
   █████████

## SECTION III

1. ████████████████████████████████████████████████████████████████   ☐ Yes  ☐ No
   ████████████████████████████████████████

   _____
   _____
   _____

2. ████████████████████████████████████████████████████████████████████████████████████

   ████████████████████████████████████████

   ████████████████████████████████████   ☐ Yes  ☐ No  _____

   ████████████████████████████████████   ☐ Yes  ☐ No  _____

   ████████████████████████████████████   ☐ Yes  ☐ No  _____

3. Have you been advised of or do you have reason to believe, that you may   ☐ Yes  ☐ No
   need medical treatment in the future? If YES please give details

   _____
   _____
   _____

## SECTION IV

1. Have you ever been advised to have surgery which has not been █████████████████████   ☐ No
   █████████████████████████

   _____
   _____
   _____

2. ████████████████████████████████████████████████████████████████████████████████████
   ████████████████████████████████████

   ████████████████████████████████████   ☐ Yes  ☐ No  _____

   ████████████████████████████████████   ☐ Yes  ☐ No  _____

   ████████████████████████████████████   ☐ Yes  ☐ No  _____

   ████████████████████████████████████   ☐ Yes  ☐ No  _____

   ████████████████████████████████████   ☐ Yes  ☐ No  _____

   ████████████████████████████████████   ☐ Yes  ☐ No  _____

   ████████████████████████████████████   ☐ Yes  ☐ No  _____
   █████████

   ████████████████████████████████████   ☐ Yes  ☐ No





9. ██████████████████████████████████████████     If  YES - Please Give Details
   ████████████████████████████████████

   _____
   _____
   _____

10. ████████████████████████████████████         ████████████
    ████████████████████████████████████
    ██████████████

                                                ████████████
                                                _____
                                                _____
                                                _____

**Give complete details of any YES or NO answers to question in the Personal Medical History Form**

| Section | Question | Details – include diagnosis, treatment Duration and results | Name and address of Doctor and medical facility |
|---------|----------|------------------------------------------------------------|------------------------------------------------|
|         |          |                                                            |                                                |
|         |          |                                                            |                                                |
|         |          |                                                            |                                                |
|         |          |                                                            |                                                |
|         |          |                                                            |                                                |
|         |          |                                                            |                                                |
|         |          |                                                            |                                                |
|         |          |                                                            |                                                |
|         |          |                                                            |                                                |
|         |          |                                                            |                                                |
|         |          |                                                            |                                                |
|         |          |                                                            |                                                |
|         |          |                                                            |                                                |
|         |          |                                                            |                                                |
|         |          |                                                            |                                                |

## AGREEMENT

**IT IS UNDERSTOOD AND AGREED AS FOLLOWS:**

1. I have read the statements and answers recorded herein. They are to the best of my knowledge and belief, true and complete and correctly recorded. Underwriters will rely on this information in making their determinations.

2. No agent, broker or medical examiner has authority to waive the answers to any questions, to determine insurability, to waive any of the Underwriters rights or requirements, or to make or alter any contract or policy.

3. The Underwriter has the right to require medical exams and tests to determine insurability.

4. The Insurance applied for will not take effect unless the health of the proposed Insured remains as stated in the Application on the inception date of the proposed policy.

Signature of Proposed Insured: _____    Date: June 22, 2016

Signature of Agent: _____    Date: 7-25-2016

Print Name of Agent: Dennis Gromes _____

The following declaration is ONLY to be completed where a team is effecting this insurance on behalf of a player:-

We hereby warrant that to the best of our understanding and belief all the answers and statements herein contained are full, complete and true and have been correctly recorded and we do not know of any other information which is likely to influence the decision of the Underwriters and that we are willing to accept a Policy, subject to terms and conditions of such Policy, to be issued on the basis of and in consideration of the proposal, which we understand shall be attached to and constitute a part of the contract of Insurance

Signature of Club Official _____    Date: _____

Position Held _____

Signature of Proposed Insured: _____    Date: _____

Print Name of Proposed Insured: _____

**AUTHORIZATION TO RELEASE PERSONAL HEALTH INFORMATION**

**Purpose:** The purpose of this HIPPA Authorization (the "Authorization") is to permit Hanleigh Management, Inc. and/or Lloyd's, and its Affiliates to obtain nonpublic personal information about me, the Insured named below, for the purposes of (1) to determine my eligibility for and obtaining insurance products and services from one or more of the insurers or institutions; (2) to monitor, track, or verify my health or medical status and condition in connection with any life insurance policy under which my life is insured, including any conversions thereof or replacements therefore; and (3) to develop and use indicies that do not personally identify individuals related to actual and anticipated longevity, mortality, life expectancies, and/or similar measures.

**Information to be Released:** The term "Information" as used in this Authorization refers to the information to be released pursuant to this Authorization including but not limited to any personal health information, records or data concerning my past, present or future mental, physical or behavioral health or condition ("Information"), to the extent permitted by law.

Specifically, Information includes all information, records or data relating to my: physical or mental history or condition; medical treatment, diagnosis, or prognosis, including medications prescribed to me; other insurance coverage(s); hazardous activities; general character and general reputation; finances; occupation; avocation, including any hazardous hobbies; driving records; aviation activities and other personal traits. The term Information does not include psychotherapy notes.

I understand that this Information may include results from blood, saliva, urine and other tests.

I further understand that this Information may, if applicable, include information regarding diagnosis, prognosis and treatment of: alcohol or drug abuse (including records protected under federal law, 42 CFR Part 2); serious communicable disease or infection, including sexually transmitted diseases; HIV infection, including medical test results.

**Authorization:** I authorize any physician or other medical practitioner, any hospital, clinic, or other health-related facility, any medical testing laboratory, any insurer, any state motor vehicle department, my past or current employer(s), the Social Security Administration, and any other organization, institution or person (An Authorized HCP) that has Information about me to disclose any and all information to Hanleigh Management Inc. and/or Lloyd's, and its Affiliates and its agents and representatives. I also authorize my Agent, named below, to receive information to assist in the purpose of this Authorization to the extent permitted by law.

I understand that Information disclosed to Hanleigh Management Inc. and/or Lloyd's, and its Affiliates may have been subject to state and federal privacy laws and regulations. Once Information is disclosed to Hanleigh Management Inc. and/or Lloyd's, and its Affiliates it may no longer be subject to those laws and regulations. I understand that no Authorized HCP or covered entity may condition my treatment, payment, enrollment, or eligibility for benefits on whether I sign this Authorization.

A photocopy of this Authorization shall be as valid as the original. I will receive a copy of this Authorization.

**Right to Revoke Authorization:** This Authorization shall be effective for two (2) years after the date signed below. I acknowledge and understand that I may revoke this Authorization any time with respect to any Authorized HCP by notifying such Authorized HCP in writing of my revocation of this Authorization and delivering my revocation by mail or personal delivery at such address designated to me by such Authorized HCP, provided that, any revocation of this Authorization shall not apply to the extent that the Authorized HCP has taken action in reliance upon this Authorization prior receiving written notice of my revocation.

Signature of Proposed Insured: _____   Date: _June 22, 2016_

Print Name of Proposed Insured:   Adrian Peterson

Signature of Agent: _____   Date: _7·25·2016_

Print Name of Agent:   Dennis Gomes

## Player Declaration Form

Name: Adrian Peterson

Age:  30

Club:  NFL

I, Adrian Peterson, hereby represent, warrant and undertake that:

1.  I do not have a criminal record.

2.  I have not been convicted of driving under the influence of alcohol and/or drugs.

3.  I have not been convicted of any drug and/or alcohol related offences.

4.  I have not been convicted of any sex related offences.

5.  I shall not at any time do anything detrimental to or say anything detrimental about the NFL Club

6.  I shall not behave in any way that may be an embarrassment to or damage the reputation of the NFL Club

7.  I confirm that I am currently in a good state of health and have been so for a period of 30 days prior to the date stated below. Further, I confirm that I am currently free from any injuries or illness which would prevent me from playing or training as a professional NFL player

8.  To the best of my knowledge and belief there are no other conditions (medical or otherwise) that might affect my ability to fulfil the Player Contract.

To the best of my knowledge and belief there are no other facts or circumstances, which are likely to discredit or damage the reputation of the NFL Club.

I hereby acknowledge that the above are conditions of this agreement and that in the event that any of the above are found to be untrue or become untrue, Thrivest Speciality Funding and Hanleigh Insurance, shall have the right to terminate this agreement forthwith without any liability to me whatsoever.  I agree to notify Thrivest Speciality Funding and Hanleigh Insurance of any facts or circumstances that may impact on the above as soon as such facts or circumstances arise. The foregoing representations, warranties and undertakings are made by me to induce Thrivest Speciality Funding and Hanleigh Insurance to enter into this agreement and I hereby acknowledge and concede that Thrivest Speciality Funding and Hanleigh Insurance has entered into this agreement in reliance thereon.

Please sign below to acknowledge your acceptance of the above.

Signed...........................................................

Dated......... 6-22-16

# Privacy Certificate Statement



**CERTIFICATE NUMBER:** ████████████

## UNDERWRITERS AT LLOYD'S, LONDON

The Certain Underwriters at Lloyd's, London want you to know how we protect the confidentiality of your non-public personal information. We want you to know how and why we use and disclose the information that we have about you. The following describes our policies and practices for securing the privacy of our current and former customers.

## INFORMATION WE COLLECT

The non-public personal information that we collect about you includes, but is not limited to:

A. Information contained in applications or other forms that you submit to us, such as name, address, and social security number;
B. Information about your transactions with our affiliates or other third-parties, such as balances and payment history;
C. Information we receive from a consumer-reporting agency, such as credit-worthiness or credit history.

## INFORMATION WE DISCLOSE

We disclose the information that we have when it is necessary to provide our products and services. We may also disclose information when the law requires or permits us to do so.

## CONFIDENTIALITY AND SECURITY

Only our employees and others who need the information to service your account have access to your personal information. We have measures in place to secure our paper files and computer systems.

## RIGHT TO ACCESS OR CORRECT YOUR PERSONAL INFORMATION

You have a right to request access to or correction of your personal information that is in our possession.

## CONTACTING US

If you have any questions about this privacy notice or would like to learn more about how we protect your privacy, please contact the agent or broker who handled this insurance. We can provide a more detailed statement of our privacy practices upon request.