

# NFL PLAYER CONTRACT

THIS CONTRACT is between **ADRIAN PETERSON**, hereinafter "Player," and **NEW ORLEANS LOUISIANA SAINTS, LLC**, a **DELAWARE** limited liability company hereinafter "Club," operating under the name of the **NEW ORLEANS LOUISIANA SAINTS** as a member of the National Football League, hereinafter "League." In consideration of the promises made by each to the other, Player and Club agree as follows:

**1. TERM.** This contract covers **2** football season(s), and will begin on the date of execution or March 1, **2017**, whichever is later, and end on February 28 or 29, **2019**, unless extended, terminated, or renewed as specified elsewhere in this contract.

**2. EMPLOYMENT AND SERVICES.** Club employs Player as a skilled football player. Player accepts such employment. He agrees to give his best efforts and loyalty to the Club, and to conduct himself on and off the field with appropriate recognition of the fact that the success of professional football depends largely on public respect for and approval of those associated with the game. Player will report promptly for and participate fully in Club's official mandatory minicamp(s), official preseason training camp, all Club meetings and practice sessions, and all preseason, regular season and postseason football games scheduled for or by Club. If invited, Player will practice for and play in any all-star football game sponsored by the League. Player will not participate in any football game not sponsored by the League unless the game is first approved by the League.

**3. OTHER ACTIVITIES.** Without prior written consent of the Club, Player will not play football or engage in activities related to football otherwise than for Club or engage in any activity other than football which may involve a significant risk of personal injury. Player represents that he has special, exceptional and unique knowledge, skill, ability, and experience as a football player, the loss of which cannot be estimated with any certainty and cannot be fairly or adequately compensated by damages. Player therefore agrees that Club will have the right, in addition to any other right which Club may possess, to enjoin Player by appropriate proceedings from playing football or engaging in football-related activities other than for Club or from engaging in any activity other than football which may involve a significant risk of personal injury.

**4. PUBLICITY AND NFLPA GROUP LICENSING PROGRAM.**
(a) Player hereby grants to Club and the League, separately and together, the right and authority to use, and to authorize others to use solely as described below, his name, nickname, initials, likeness, image, picture, photograph, animation, persona, autograph/signature (including facsimiles thereof), voice, biographical information and/or any and all other identifying characteristics (collectively, "Publicity Rights"), for any and all uses or purposes that publicize and promote NFL Football, the League or any of its member clubs in any way in any and all media or formats, whether analog, digital or other, now known or hereafter developed, including, but not limited to, print, tape, disc, computer file, radio, television, motion pictures, other audio-visual and audio works, Internet, broadband platforms, mobile platforms, applications, and other distribution platforms. Without limiting the foregoing, this grant includes the right to use Player's Publicity Rights for the purpose of publicizing and promoting the following aspects of NFL Football, the League and/or any of its member clubs: brands, games, ticket sales, game broadcasts and telecasts, programming focused on the NFL, one or more NFL clubs and/or their games and events (e.g., coaches shows, highlight based shows such as *Inside the NFL*, behind-the-scenes programming such as *Hard Knocks*), other NFL-related media offerings (e.g., branded content segments featuring NFL game footage and other programming enhancements), media distribution platforms (e.g., NFL.com, NFL Mobile, NFL Network), official events (e.g., NFL Kickoff, NFL Draft), officially sanctioned awards programs (e.g., Rookie of the Year), and public service or community oriented initiatives (e.g., Play60). For purposes of clarity, the foregoing grant of rights includes the right and authority to use, and to authorize affiliates or business partners to use, after the term of this Agreement any Publicity Rights fixed in a tangible medium (e.g., filmed, photographed, recorded or otherwise captured) during the term of this Agreement solely for the purposes described herein. Notwithstanding anything to the contrary, the foregoing grant does not confer, during or after the term of this Agreement, any right or authority to use Player's Publicity Rights in a manner that constitutes any endorsement by Player of a third-party brand, product or service ("Endorsement"). For purposes of clarity, and without limitation, it shall not be an Endorsement for Club or the League to use, or authorize others to use, including, without limitation, in third party advertising and promotional materials, footage and photographs of Player's participation in NFL games or other NFL events that does not unduly focus on, feature, or highlight, Player in a manner that leads the reasonable consumer to believe that Player is a spokesperson for, or promoter of, a third-party commercial product or service.

Player will cooperate with the news media, and will participate upon request in reasonable activities to promote the Club and the League.

Player and National Football League Players Association, including any of its affiliates ("NFLPA") do not and will not contest during or after the term of this agreement, and this hereby confirms their acknowledgment of, the exclusive rights of the League, Club and any NFL member club (i) to telecast, broadcast, or otherwise distribute, transmit or perform, on a live, delayed, or archived basis, in any and all media now known or hereafter developed, any NFL games or any excerpts thereof and (ii) to produce, license, offer for sale, sell, market, or otherwise distribute or perform (or authorize a third party to do any of the foregoing), on a live, delayed, or archived basis, any NFL games or any excerpts thereof, in any and all media now known or hereafter developed, including, but not limited to, packaged or other electronic or digital media.

1

Nothing herein shall be construed to grant any Publicity Rights for use in licensed consumer products, whether traditional or digital (e.g., video games, trading cards, apparel), other than such products that constitute programming (as described herein) or news and information offerings regardless of medium (e.g., DVDs, digital highlight offerings).

(b) Player hereby assigns the NFLPA and its licensing affiliates, if any, the exclusive and unlimited right to use, license and sublicense the right to use his name, nickname, initials, autograph/signature (including facsimiles), voice, picture, photograph, animation, image, likeness, persona, jersey number, statistics, data, copyrights, biographical information and/or other personal indicia (individually and collectively, "Rights") for use in connection with any product, brand, service, appearance, product line or other commercial use and any sponsorship, endorsement or promotion thereof, when more than five (5) NFL player Rights are involved, regardless of team affiliation and whether that number is reached using player Rights simultaneously or individually, in any form, media, or medium (now known or hereafter developed) during a consecutive 12-month period (a "group licensing program"). For sponsorships, endorsements, and promotions, group licensing programs are further defined as those: (a) in any one product category, as defined by industry standards; or (b) in different categories if the products all use similar or derivative design or artwork, or one player product is used to promote another player product.

The Rights may also be used for the promotion of the NFLPA, its affiliated entities and/or its designees (the "NFLPA Entities"), provided such promotion does not constitute an endorsement by Player of a commercial product not a part of a group licensing program. Player agrees to participate, upon request of the NFLPA and without additional compensation, in reasonable activities to promote the NFLPA Entities, which shall include (i) up to three (3) personal appearances per year or (ii) up to fifteen (15) minutes per week dedicated to promoting the NFLPA Entities. Player retains the right to grant permission to others to utilize his Rights if that individual or entity is not concurrently utilizing the Rights of five (5) or more other NFL players for any commercial purpose whatsoever. If Player's inclusion in an NFLPA program is precluded by an individual exclusive endorsement agreement, and Player provides the NFLPA with immediate written notice of that preclusion, the NFLPA agrees to exclude Player from that particular program. Should Player fail to perform any of his obligations hereunder, the NFLPA may withhold payments owed to Player, if any, in connection with this Group Licensing Assignment.

In consideration for this assignment of rights, the NFLPA agrees to use the revenues it receives from group licensing programs to support the objectives as set forth in the Bylaws of the NFLPA and as otherwise determined by the NFLPA Board. The NFLPA further agrees to use reasonable efforts to promote the use of NFL player Rights in group licensing programs, to provide group licensing opportunities to all NFL players, and to monitor and police unauthorized third-party use of the Rights. The NFLPA makes no representations regarding group licensing other than those expressed herein. This agreement shall be construed under Virginia law.

The assignment in this paragraph shall expire on December 31 of the latter of (i) the third year following the execution of this contract, or (ii) the year after this contract expires, and may not be revoked, terminated or otherwise assigned in any manner by Player until such date. Neither Club nor the League is a party to the terms of this paragraph, which is included herein solely for the administrative convenience and benefit of Player and the NFLPA. Nothing in Paragraph 4b shall be construed or deemed to modify in any way the rights set forth in Paragraph 4a, and the fact that Paragraph 4b (or any of the terms thereof) appears in the Player Contract shall not be referred to, relied upon, or otherwise cited by Player and/or the NFLPA or any of its affiliates in any dispute or legal proceeding as evidence that the NFL, any NFL entity, any Club or Club Affiliate, or any licensee of any of the foregoing has consented, agreed, acknowledged, or does not contest the applicability or interpretation of Paragraph 4b.

5. **COMPENSATION.** For performance of Player's services and all other promises of Player, Club will pay Player a yearly salary as follows:

$ 1,000,000.00   /*_____ for the 20_17___ season;

$ 1,050,000.00   /*_____ for the 20_18___ season;

$ _____  /*_____ for the 20_____ season;

$ _____  /*_____ for the 20_____ season;

$ _____  /*_____ for the 20_____ season;

$ _____  /*_____ for the 20_____ season;

$ _____  /*_____ for the 20_____ season;

$ _____  /*_____ for the 20_____ season;

$ _____  /*_____ for the 20_____ season;

$ _____  /*_____ for the 20_____ season;

$ _____  /*_____ for the 20_____ season;

$ _____  /*_____ for the 20_____ season.

(* - designates the compensation Club will pay player if the player is not on Club's Active/Inactive List)

In addition, Club will pay Player such earned performance bonuses as may be called for in this contract; Player's necessary traveling expenses from his residence to training camp; Player's reasonable board and lodging expenses during preseason training and in connection with playing preseason, regular season, and postseason football games outside Club's home city; Player's necessary traveling expenses to and from preseason, regular season, and postseason football games outside Club's home city; Player's necessary traveling expenses to his residence if this contract is terminated by Club; and such additional compensation, benefits and reimbursement of expenses as may be called for in any collective bargaining agreement in existence during the term of this contract. (For purposes of this contract, a collective bargaining agreement will be deemed to be "in existence" during its stated term or during any period for which the parties to that agreement agree to extend it.)

**6. PAYMENT.** Unless this contract or any collective bargaining agreement in existence during the term of this contract specifically provides otherwise, Player will be paid 100% of his yearly salary under this contract in equal weekly or biweekly installments over the course of the applicable regular season period, commencing with the first regular season game played by Club in each season. Unless this contract specifically provides otherwise, if this contract is executed or Player is activated after the beginning of the regular season, the yearly salary payable to Player will be reduced proportionately and Player will be paid the weekly or biweekly portions of his yearly salary becoming due and payable after he is activated. Unless this contract specifically provides otherwise, if this contract is terminated after the beginning of the regular season, the yearly salary payable to Player will be reduced proportionately and Player will be paid the weekly or bi weekly portions of his yearly salary having become due and payable up to the time of termination.

**7. DEDUCTIONS.** Any advance made to Player will be repaid to Club, and any properly levied Club fine or Commissioner fine against Player will be paid, in cash on demand or by means of deductions from payments coming due to the Player under this contract, the amount of such deductions to be determined by Club unless this contract or any collective bargaining agreement in existence during the term of this contract specifically provides otherwise.

**8. PHYSICAL CONDITION.** Player represents to Club that he is and will maintain himself in excellent physical condition. Player will undergo a complete physical examination by the Club physician upon Club request, during which physical examination Player agrees to make full and complete disclosure of any physical or mental condition known to him which might impair his performance under this contract and to respond fully and in good faith when questioned by the Club physician about such condition. If Player fails to establish or maintain his excellent physical condition to the satisfaction of the Club physician, or make the required full and complete disclosure and good faith responses to the Club physician, then Club may terminate this contract.

**9. INJURY.** Unless this contract specifically provides otherwise, if Player is injured in the performance of his services under this contract and promptly reports such injury to the Club physician or trainer, then Player will receive such medical and hospital care during the term of this contract as the Club physician may deem necessary, and will continue to receive his yearly salary for so long, during the season of injury only and for no subsequent period covered by this contract, as Player is physically unable to perform the services required of him by this contract because of such injury. If Player's injury in the performance of his services under this contract results in his death, the unpaid balance of his yearly salary for the season of injury will be paid to his stated beneficiary, or in the absence of a stated beneficiary, to his estate.

**10. WORKERS' COMPENSATION.** Any compensation paid to Player under this contract or under any collective bargaining agreement in existence during the term of this contract for a period during which he is entitled to workers' compensation benefits by reason of temporary total, permanent total, temporary partial, or permanent partial disability will be deemed an advance payment of workers' compensation benefits due Player, and Club will be entitled to be reimbursed the amount of such payment out of any award of workers' compensation.

**11. SKILL, PERFORMANCE AND CONDUCT.** Player understands that he is competing with other players for a position on Club's roster within the applicable player limits. If at any time, in the sole judgment of Club, Player's skill or performance has been unsatisfactory as compared with that of other players competing for positions on Club's roster, or if Player has engaged in personal conduct reasonably judged by Club to adversely affect or reflect on Club, then Club may terminate this contract. In addition, during the period any salary cap is legally in effect, this contract may be terminated if, in Club's opinion, Player is anticipated to make less of a contribution to Club's ability to compete on the playing field than another player or players whom Club intends to sign or attempts to sign, or another player or players who is or are already on Club's roster, and for whom Club needs room.

**12. TERMINATION.** The rights of termination set forth in this contract will be in addition to any other rights of termination allowed either party by law. Termination will be effective upon the giving of written notice, except that Player's death, other than as a result of injury incurred in the performance of his services under this contract, will automatically terminate this contract. If this contract is terminated by Club and either Player or Club so requests, Player will promptly undergo a complete physical examination by the Club physician.

**13. INJURY GRIEVANCE.** Unless a collective bargaining agreement in existence at the time of termination of this contract by Club provides otherwise, the following Injury Grievance procedure will apply: If Player believes that at the time of termination of this contract by Club he was physically unable to perform the services required of him by this contract because of an injury incurred in the performance of his services under this contract, Player may, within 60 days after examination by the Club physician, submit at his own expense to examination by a physician of his choice. If the opinion of Player's physician with respect to his physical ability to perform the services required of him by this contract is contrary to that of the Club's physician, the dispute will be submitted within a reasonable time to final and binding arbitration by an arbitrator selected by Club and Player or, if they are unable to agree, one selected in accordance with the procedures of the American Arbitration Association on application by either party.

**14. RULES.** Player will comply with and be bound by all reasonable Club rules and regulations in effect during the term of this contract which are not inconsistent with the provisions of this contract or of any collective bargaining agreement in existence during the term of this contract. Player's attention is also called to the fact that the League functions with certain rules and procedures expressive of its operation as a joint venture among its member clubs and that these rules and practices may affect Player's relationship to the League and its member clubs independently of the provisions of this contract.

**15. INTEGRITY OF GAME.** Player recognizes the detriment to the League and professional football that would result from impairment of public confidence in the honest and orderly conduct of NFL games or the integrity and good character of NFL players. Player therefore acknowledges his awareness that if he accepts a bribe or agrees to throw or fix an NFL game; fails to promptly report a bribe offer or an attempt to throw or fix an NFL game; bets on an NFL game; knowingly associates with gamblers or gambling activity; uses or provides other players with stimulants or other drugs for the purpose of attempting to enhance on-field performance; or is guilty of any other form of conduct reasonably judged by the League Commissioner to be detrimental to the League or professional football, the Commissioner will have the right, but only after giving Player the opportunity for a hearing at which he may be represented by counsel of his choice, to fine Player in a reasonable amount; to suspend Player for a period certain or indefinitely; and/or to terminate this contract.

**16. EXTENSION.** Unless this contract specifically provides otherwise, if Player becomes a member of the Armed Forces of the United States or any other country, or retires from professional football as an active player, or otherwise fails or refuses to perform his services under this contract, then this contract will be tolled between the date of Player's induction into the Armed Forces, or his retirement, or his failure or refusal to perform, and the later date of his return to professional football. During the period this contract is tolled, Player will not be entitled to any compensation or benefits. On Player's return to professional football, the term of this contract will be extended for a period of time equal to the number of seasons (to the nearest multiple of one) remaining at the time the contract was tolled. The right of renewal, if any, contained in this contract will remain in effect until the end of any such extended term.

**17. ASSIGNMENT.** Unless this contract specifically provides otherwise, Club may assign this contract and Player's services under this contract to any successor to Club's franchise or to any other Club in the League. Player will report to the assignee Club promptly upon being informed of the assignment of his contract and will faithfully perform his services under this contract. The assignee club will pay Player's necessary traveling expenses in reporting to it and will faithfully perform this contract with Player.

**18. FILING.** This contract will be valid and binding upon Player and Club immediately upon execution. A copy of this contract, including any attachment to it, will be filed by Club with the League Commissioner within 10 days after execution. The Commissioner will have the right to disapprove this contract on reasonable grounds, including but not limited to an attempt by the parties to abridge or impair the rights of any other club, uncertainty or incompleteness in expression of the parties' respective rights and obligations, or conflict between the terms of this contract and any collective bargaining agreement then in existence. Approval will be automatic unless, within 10 days after receipt of this contract in his office, the Commissioner notifies the parties either of disapproval or of extension of this 10-day period for purposes of investigation or clarification pending his decision. On the receipt of notice of disapproval and termination, both parties will be relieved of their respective rights and obligations under this contract.

**19. DISPUTES.** During the term of any collective bargaining agreement, any dispute between Player and Club involving the interpretation or application of any provision of the NFL collective bargaining agreement or this contract will be submitted to final and binding arbitration in accordance with the procedure called for in any collective bargaining agreement in existence at the time the event giving rise to any such dispute occurs.

**20. NOTICE.** Any notice, request, approval or consent under this contract will be sufficiently given if in writing and delivered in person or mailed (certified or first class) by one party to the other at the address set forth in this contract or to such other address as the recipient may subsequently have furnished in writing to the sender.

**21. OTHER AGREEMENTS.** This contract, including any attachment to it, sets forth the entire agreement between Player and Club and cannot be modified or supplemented orally. Player and Club represent that no other agreement, oral or written, except as attached to or specifically incorporated in this contract, exists between them. The provisions of this contract will govern the relationship between Player and Club unless there are conflicting provisions in any collective bargaining agreement in existence during the term of this contract, in which case the provisions of the collective bargaining agreement will take precedence over conflicting provisions of this contract relating to the rights or obligations of either party.

**22. LAW.** This contract is made under and shall be governed by the laws of the State of LOUISIANA.

**23. WAIVER AND RELEASE.** Player waives and releases: (i) any claims relating to the 2011 lockout; (ii) any antitrust claims relating to the Draft, restrictions on free agency, franchise player designations, transition player designations, the Entering Player Pool, the Rookie Compensation Pool, or any other term or condition of employment relating to conduct engaged in prior to the date of this Agreement; and (iii) any claims relating to conduct engaged in pursuant to the express terms of any collective bargaining agreement during the term of any such agreement. This waiver and release also extends to any conduct engaged in pursuant to the express terms of the Stipulation and Settlement Agreement in *White*. This waiver and release does not waive any rights player may have to commence a grievance under the 2006 CBA or to commence a grievance or other arbitration under the 2011 CBA.

**24. OTHER PROVISIONS.**
(a) Each of the undersigned hereby confirms that (i) this contract, renegotiation, extension or amendment sets forth all components of the player's remuneration for playing professional football (whether such compensation is being furnished directly by the Club or by a related or affiliated entity); and (ii) there are not undisclosed agreements of any kind, whether express or implied, oral or written, and there are no promises, undertakings, representations, commitments, inducements, assurances of intent, or understandings of any kind that have not been disclosed to the NFL involving consideration of any kind to be paid, furnished or made available to Player or any entity or person owned or controlled by, affiliated with, or related to Player, either during the term of this contract or thereafter.

(b) Each of the undersigned further confirms that, except as separately set forth in any attachment submitted herewith consistent with the Collective Bargaining Agreement, the .pdf NFL Player Contract Form as set forth herein has not been modified from the form officially authorized for use by the NFL and the NFLPA.

(c) Each of the undersigned further confirms that, except insofar as any of the undersigned may describe in an addendum to this contract, to the best of their knowledge, no conduct in violation of the Anti-Collusion rules took place with respect to this contract. Each of the undersigned further confirms that nothing in this contract is designed or intended to defeat or circumvent any provisions of the collective bargaining agreement dated August 4, 2011, including but not limited to the Rookie Compensation Pool and Salary Cap provisions; however, any conduct permitted by that Agreement shall not be considered a violation of this confirmation.

(d) PERFORMANCE-BASED PAY. Player's attention is called to the fact that he may be entitled to Performance-Based Pay in accordance with the procedures outlined in Article 28, and that his eligibility for such pay is based on a formula that takes into account his playtime percentage and compensation.

## 25. SPECIAL PROVISIONS.

SEE ATTACHED ADDENDA

THIS CONTRACT is executed in six (6) copies. Player acknowledges that before signing this contract he was given the opportunity to seek advice from or be represented by persons of his own selection.

_____
PLAYER SIGNATURE

Adrian Peterson
_____
PLAYER PRINT

_____
PLAYER HOME ADDRESS

_____
TELEPHONE NUMBER

4-28-17
_____
DATE

_____
CLUB EXECUTIVE SIGNATURE

Khai Harley
_____
CLUB EXECUTIVE PRINT

NEW ORLEANS LOUISIANA SAINTS, LLC
_____
CLUB NAME

5800 AIRLINE DRIVE
_____
CLUB ADDRESS

METAIRIE, LA  70003
_____

5/1/17
_____
DATE

_____
PLAYER'S AGENT SIGNATURE

Michael J. Lartigue
_____
PLAYER'S AGENT PRINT

_____
ADDRESS

_____

_____
TELEPHONE NUMBER

_____
DATE

**Copy Distribution:**   Management Council (Original Signature)
Player, Member Club (Photocopy)
League Office, NFLPA, Player Agent (Electronic Mail)

6

## 25. SPECIAL PROVISIONS.

SEE ATTACHED ADDENDA

THIS CONTRACT is executed in six (6) copies. Player acknowledges that before signing this contract he was given the opportunity to seek advice from or be represented by persons of his own selection.

PLAYER SIGNATURE

Adrian Peterson
PLAYER PRINT

PLAYER HOME ADDRESS

TELEPHONE NUMBER

DATE

CLUB EXECUTIVE SIGNATURE

Khai Harley
CLUB EXECUTIVE PRINT

NEW ORLEANS LOUISIANA SAINTS, LLC
CLUB NAME

5800 AIRLINE DRIVE
CLUB ADDRESS

METAIRIE, LA 70003

DATE

*[signature]*
PLAYER'S AGENT SIGNATURE

Michael J. Lartigue
PLAYER'S AGENT PRINT

8104 Port Anne Way
ADDRESS
Leander, TX 78641

512-740-2002
TELEPHONE NUMBER

4/24/17
DATE

Copy Distribution:  Management Council (Original Signature)
Player, Member Club (Photocopy)
League Office, NFLPA, Player Agent (Electronic Mail)

6

## SIGNING BONUS

Between the **New Orleans Saints LA Saints, LLC** ("Club") and **Adrian Peterson** ("Player"). As additional consideration for the execution of the NFL Player Contract for the years 2017 and 2018, Club agrees to pay Player a bonus in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) (the "Bonus") payable as follows:

        $2,500,000.00        on or about May 15, 2017.

The Bonus is also subject to the approval of this Contract by the NFL Management Council.

It is expressly understood that no part of the Bonus is part of any salary in the Contract for the year(s) set forth above or for any subsequent contract year(s) which may be added to the Contract by option (if permissible), extension, or any other permissible means and that such obligations are not terminable if such contract(s) is (are) terminated via the NFL Waiver System, and provided player is not in breach of this agreement and/or his NFL Player Contract at the time of such termination.

Player shall be subject to forfeiture of Salary to the maximum extent permitted under Article 4, Section 9 of the Collective Bargaining Agreement, dated August 4, 2011.

No term or condition of this agreement, and no breach thereof, shall be waived, altered or modified except by written instrument.

Executed this ____ day of April, 2017.

CLUB _____
Khai Harley

PLAYER _____
Adrian Peterson

AGENT

_____
Michael J. Lartigue

_____ / _____ / _____
Player  Club   Agent

7

## SIGNING BONUS

Between the New Orleans Saints LA Saints, LLC ("Club") and Adrian Peterson ("Player"). As additional consideration for the execution of the NFL Player Contract for the years 2017 and 2018, Club agrees to pay Player a bonus in the amount of Two Million Five Hundred Thousand Dollars ($2,500,000.00) (the "Bonus") payable as follows:

$2,500,000.00      on or about May 15, 2017.

The Bonus is also subject to the approval of this Contract by the NFL Management Council.

It is expressly understood that no part of the Bonus is part of any salary in the Contract for the year(s) set forth above or for any subsequent contract year(s) which may be added to the Contract by option (if permissible), extension, or any other permissible means and that such obligations are not terminable if such contract(s) is (are) terminated via the NFL Waiver System, and provided player is not in breach of this agreement and/or his NFL Player Contract at the time of such termination.

Player shall be subject to forfeiture of Salary to the maximum extent permitted under Article 4, Section 9 of the Collective Bargaining Agreement, dated August 4, 2011.

No term or condition of this agreement, and no breach thereof, shall be waived, altered or modified except by written instrument.

Executed this ____ day of April, 2017.

CLUB                                                          PLAYER

_____                              _____
Khai Harley                                                   Adrian Peterson

                              AGENT
                        _____
                              Michael J. Lartigue

____/____/____
Player  Club  Agent

Adrian Peterson                                                                                                                                        8

## Addendum 1 to NFL Player Contract

This is an Addendum to the National Football League ("NFL") Player Contract between **ADRIAN PETERSON** ("Player") and the **New Orleans Saints LA Saints, LLC** ("Club") dated April____, 2017 and ending February 28, 2019 (the "Contract"). For the purpose of this Addendum, "Regular Season" shall mean the NFL regular season excluding pre-season and post-season games unless otherwise specifically included.

1. **2017 ONE YEAR CONDITIONAL FULL PARAGRAPH 5 SKILL/INJURY/SALARY CAP GUARANTEE ("GUARANTEE").** Despite any contrary language in this NFL Player Contract, Club agrees for the 2017 contract year only, it will pay Player the full One Million Dollar ($1,000,000.00) salary provided in Paragraph 5, despite the fact that: (1) in Club's sole judgment, Player's skill or performance has been unsatisfactory as compared with that of other players competing for positions on Club's roster, and Player's contract is terminated via the NFL waiver system, or (2) Player, due to death, illness or injury, (but expressly excluding any death, illness or injury that results from Player's engaging in any activity that breaches Paragraph 3 of the NFL Player Contract) is unable, in the sole discretion of Club's physician, to pass Club's pre-season physical examination for the 2017 contract year, and/or unable to perform his playing services for Club, and Player's contract is terminated via the NFL waiver system, or (3) Player is released for salary cap reasons and Player's contract is terminated via the NFL waiver system (provided Player is not in default under the terms and conditions of his NFL Player Contract at such time). In the event this NFL Player Contract is terminated and Player subsequently plays for any professional football organization, Club's obligation under this Guarantee will be reduced by the amount of any and all compensation, including salary, and signing, reporting and/or incentive bonuses, earned by Player from such football organization during the unexpired term covered by this Guarantee. This Guarantee by Club will not apply in any year after 2017, regardless of whether Player is, as of this date, under contract or option to Club for a subsequent year, and regardless of whether Player passes Club's physical examination for a year subsequent to 2017.

    In the event Player, during the 2017 League Year: (i) fails or refuses to report to, practice with or play for Club for any reason other than Player's death, illness or injury, (but expressly excluding any death, illness or injury that results from Player's engaging in any activity that breaches Paragraph 3 of the NFL Player Contract); (ii) fails or refuses to report to, practice with or play for Club due to Player's suspension by the NFL or Club for Conduct Detrimental or for violating any of the NFL's disciplinary policies or programs, including but not limited to the NFL Personal Conduct Policy, the NFL Policy and Program for Substances of Abuse and the NFL Policy and Procedures for Anabolic Steroids and Related Substances; (iii) fails or refuses to report to, practice with, or play for Club due to Player's conviction of, or incarceration for a felony offense; (iv) voluntarily retires from the NFL; (v) voluntarily leaves Club for any reason without Club's consent; or (vi) materially breaches any provision of this Agreement, including, without limitation, any representation or warranty, then, this Guarantee shall be deemed NULL AND VOID. Player will be eligible to earn any remaining portions of his 2017 Paragraph 5 salary on a non-guaranteed basis subject to any applicable fines and/or forfeitures. Player shall not be in violation of this Agreement if Player is unable to pass Club's physical, practice or play with Club as a sole result of an NFL football-related injury sustained while performing his services under this Contract, based upon the sole opinion of the Club's physician, provided that Player has promptly and fully disclosed his physical condition to the Club and promptly undergoes whatever reasonable and customary rehabilitation and treatment the Club directs.

    WAIVER SYSTEM: This Guarantee in no way supersedes or obviates the applicability of the League's waiver system to Player.

2. **ROSTER BONUS.** Player will earn roster bonuses if he meets the requirements set forth in 2.1 below. For the purposes of this provision, inclusion on the Club's (90) Man Roster shall include Physically Unable to Perform, Reserve Injured, and any other roster status whereby the Club retains contractual rights to Player's services except for the following: Non-Football Injury, Did Not Report, Left Squad, Suspended or Retired.

    2.1 **Third (3rd) Day of the 2018 League Year Roster Bonus ("2018 Roster Bonus").** Player will earn a bonus in the amount of Seven Hundred Fifty Thousand Dollars ($750,000.00) if he is a member of the Club's Ninety (90) Man Roster on the third day of the 2018 League Year. The bonus, if earned, will be payable in full within fifteen days after the third day of the 2018 League Year. Player shall be subject to forfeiture of Salary to the maximum extent permitted under Article 4, Section 9 of the 2011 Collective Bargaining Agreement.

3  **2018 PER GAME ROSTER BONUSES.** Player will earn roster bonuses if he meets the requirements set forth in 3.1 and/or 3.2 below.

    3.1 **2018 FORTY SIX (46) MAN ACTIVE ROSTER BONUS.** Player will receive a total of Forty Six (46) Man Active Roster Bonuses not to exceed Four Hundred Thousand Dollars ($400,000.00) based upon the number of games during the 2018 Regular Season player is a member of the Club's Forty Six (46) Man Active Roster. Player will receive an equal installment [Twenty Five Thousand Dollars ($25,000) in the event there are 16 Regular Season games in the 2018 Regular Season] ("Roster Bonus") for each game during the 2018 Regular Season that he is a

_____/_____/_____
Player    Club    Agent

member of the Club's Forty Six (46) Man Active Roster. The amount of each Roster Bonus is expressly conditioned upon the Club's total number of Regular Season games for the 2018 season. Under any circumstances, the maximum Player may earn pursuant to this clause for the 2018 League Year is Four Hundred Thousand Dollars ($400,000.00). Each Roster Bonus, if earned, will be paid concurrent with paragraph 5 salary during the season in which it is earned. Player shall be subject to forfeiture of Salary to the maximum extent permitted under Article 4, Section 9 of the Settlement Agreement, dated July 25, 2011.

3.2 **2018 WEEKLY ROSTER BONUSES**. Player will receive a total of Roster Bonuses not to exceed One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00) based upon the number of weeks during the 2018 Regular Season player is a member of the Club's Roster. For the purposes of this provision only, membership on the Club's Roster shall be defined as being on: (a) Club's 53-Man Active/Inactive Roster, (b) the Club's Reserve/Injured List, or (c) the Club's Reserve/Physically Unable to Perform List on the Wednesday preceding each of the Club's 2018 Regular Season Games. (The Sunday of any "Bye Week" of the Club shall count as a game only for the purpose of this paragraph.) Player will receive an equal installment [Seventy Three Thousand Five Hundred Twenty Nine Dollars and Forty One Cents ($73,529.41) in the event there are 17 Regular Season weeks in the 2018 Regular Season] ("Roster Bonus") for each week during the 2018 Regular Season that he is a member of the Club's Roster as defined above. The amount of each Roster Bonus is expressly conditioned upon the total number of weeks for the 2018 Regular Season. Under any circumstances, the maximum Player may earn pursuant to this clause for the 2018 League Year is One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00). Each Roster Bonus, if earned, will be paid concurrent with paragraph 5 salary during the season in which it is earned. Player shall be subject to forfeiture of Salary to the maximum extent permitted under Article 4, Section 9 of the Settlement Agreement, dated July 25, 2011.

4. **2017-2018 LEAGUE YEAR CLUB/INDIVIDUAL PERFORMANCE INCENTIVES.**

    4.1 **2017-2018 Individual Performance – Rushing Yards**. For the 2017 and/or 2018 Regular Seasons, Player will be eligible to earn the following amounts based upon the Rushing Yards he achieves:

    | 2017-2018 Regular Season Rushing Yards | Amount |
    |---|---|
    | 750 Rushing Yards | $150,000.00  or |
    | 1000 Rushing Yards | $250,000.00  or |
    | 1250 Rushing Yards | $750,000.00  or |
    | 1500 Rushing Yards | $1,000000.00 |

    The maximum Player can earn based upon any one regular season's performance pursuant to paragraph 4.1 above is One Million Dollars ($1,000,000.00). UNDER NO CIRCUMSTANCE SHALL PLAYER EARN MORE THAN Two Million Dollars ($2,000,000.00) pursuant to paragraph 4.1.

    Additionally, should any of the preceding incentive thresholds in 4.1 become Likely To Be Earned pursuant to the CBA, dated August 4, 2011 THEN, so as to make the incentive threshold Not Likely To Be Earned, Player must improve over the immediate prior regular season in Rushing Yards in order to earn amounts listed in any of the preceding thresholds.

    4.2 **2017-2018 Individual Performance – Rushing/Receiving Touchdowns**. For the 2017 and/or 2018 Regular Seasons, Player will be eligible to earn the following amounts based upon the number of combined Rushing and Receiving Touchdowns he achieves:

    | 2017-2018 Regular Season Combined Touchdowns (Rushing and Receiving) | Amount |
    |---|---|
    | 6 Touchdowns | $250,000.00  or |
    | 8 Touchdowns | $500,000.00  or |
    | 10 Touchdowns AND Leads NFL in Rushing Touchdowns | $750,000.00 |

    The maximum Player can earn based upon any one regular season's performance pursuant to paragraph 4.2 above is Seven Hundred Fifty Thousand Dollars ($750,000.00). UNDER NO CIRCUMSTANCE SHALL PLAYER EARN MORE THAN One Million Five Hundred Thousand Dollars ($1,500,000.00) pursuant to paragraph 4.2.

    Additionally, should any of the preceding incentive thresholds in 4.2 become Likely To Be Earned pursuant to the CBA, dated August 4, 2011 THEN, so as to make the incentive threshold Not Likely To Be Earned, Player must

improve over the immediate prior regular season in combined Rushing and Receiving Touchdowns in order to earn amounts listed in any of the preceding thresholds.

4.3   **2017-2018 Club/Individual Performance – Rushing Yards**. For the 2017 and/or 2018 Regular Seasons, if Player achieves 750 or more Rushing Yards during the Regular Season AND Club qualifies for the Playoffs in the same season AND Player plays in Club's Playoff Game, Then Player will be eligible to earn the following amounts based upon his participation in each respective Playoff Game Club advances to below:

| 750 Regular Season Rushing Yards AND Playoffs AND Player Plays in Playoff Game | Amount |
|---|---|
| Club Participates in Wild Card or Divisional Round | $250,000.00  or |
| Club Participates in Conference Championship | $500,000.00  or |
| Club Wins the Super Bowl | $1,000,000.00 |

The maximum Player can earn based upon any one regular season's performance pursuant to paragraph 4.3 above is One Million Dollars ($1,000,000.00). UNDER NO CIRCUMSTANCE SHALL PLAYER EARN MORE THAN Two Million Dollars ($2,000,000.00) pursuant to paragraph 4.3.

Additionally, should any of the preceding incentive thresholds in 4.3 become Likely To Be Earned pursuant to the CBA, dated August 4, 2011 THEN, so as to make the incentive threshold Not Likely To Be Earned, Club must advance further in the Playoffs than the immediate prior season OR Player must improve over the immediate prior regular season in Rushing Yards in order to earn amounts listed in any of the preceding thresholds. For example, if Player rushes for 900 yards during the 2017 Regular Season AND Club only participates in the Wild Card Round AND Player participates in the Wild Card Round Game THEN Player would earn Two Hundred Fifty Thousand Dollars ($250,000.00). Continuing with this example, in order to earn the same incentive threshold for the 2018 season, one of the following must occur: 1. Player rushes for 750 yards during the Regular Season AND Club advances to a game beyond the Wild Card Round AND Player participates in that game OR 2. Player rushes for 901 yards during the Regular Season AND Club participates in the Wild Card Round AND Player participates in the Wild Card Round Game.

The maximum Player can earn based upon any one regular season's performance pursuant to paragraphs 4.1, 4.2, and 4.3 above is Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000.00). UNDER NO CIRCUMSTANCE SHALL PLAYER EARN MORE THAN Five Million Five Hundred Thousand Dollars ($5,500,000.00) pursuant to paragraphs 4.1, 4.2, and 4.3.

Furthermore, if Player earns any of the above amounts pursuant to Paragraphs 4.1, 4.2, and 4.3 for the 2017 Regular Season THEN an equal amount shall be added to the total amount of 2018 Weekly Roster Bonuses listed in 3.2 above. Any escalator achieved pursuant to this paragraph shall not be guaranteed. For example, if Player achieves 1000 Rushing Yards, 5 combined Rushing & Receiving Touchdowns, Club participates in the Conference Championship, and Player participates in the Conference Championship during the 2017 League Year THEN Player will earn Seven Hundred Fifty Thousand Dollars ($750,000.00) AND the amount Player can earn in 2018 Weekly Roster Bonuses shall increase by Seven Hundred Fifty Thousand Dollars ($750,000.00) to a total of Two Million Dollars ($2,000,000.00) ($1,250,000.00 plus $750,000.00). UNDER NO CIRCUMSTANCE SHALL PLAYER'S 2018 WEEKLY ROSTER BONUSES INCREASE BY MORE THAN a combined Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000.00) pursuant to paragraphs 4.1, 4.2, and 4.3.

5.   **2018 OFF-SEASON WORKOUT COMPENSATION**. Player will be eligible to receive a bonus ("Off-Season Workout Compensation") in the amount of:

| League Year | Amount of Bonus |
|---|---|
| 2018 | $50,000.00 |

for the 2018 Contract Year for participating in 90% of the Club's off-season workout program and satisfying the Club's reasonable workout requirements for that year, and for Player's timely reporting to and 100% participation in the Club's entire off-season mini-camp(s). The off-season workout program shall include on-site Club authorized rehabilitation due to a football-related injury. For the purposes of this Contract, Off-Season Workout Compensation shall be deemed to include any per diem amounts Player is eligible to earn pursuant to CBA, dated August 4, 2011. Player must be a member of the Club's 90-Man Roster at the start and completion of the Club's off-season workout program to be eligible for the Off-Season Workout Compensation (Unless Player has already fulfilled the participation requirement for the complete program.). The Off-Season Workout Compensation shall be payable to Player in a lump sum payment within five (5) days after the start of the

_____/  KK  /_____
Player    Club    Agent

Club's first Regular Season game. Eligibility for the Off-Season Workout Compensation shall be determined by records maintained by the Club. In the event that Player does not satisfy the Club's off-season workout program 90% participation requirement, he shall only receive the minimum daily amounts earned pursuant to Article 21, Section 3 of the CBA, dated August 4, 2011. Player shall not be in violation of this Agreement if Player is unable to pass Club's physical and participate in the Club's off-season workout program(s) and off-season mini-camp(s) as a sole result of an NFL football-related injury sustained while performing his services under this Contract, based upon the sole opinion of the Club's physician, provided that Player has promptly and fully disclosed his physical condition to the Club and promptly undergoes whatever reasonable and customary rehabilitation and treatment the Club directs.

6. **AUTOMATIC CONVERSIONS.** Player and Club agree that on one or more occasions and at any time during the duration of this Contract, Club shall have the right, but not the obligation, to (i) convert any portion of Player's Paragraph 5 Salary set forth in this Contract into Signing Bonus, or (ii) convert any portion or all of the Roster Bonus(es), if any, set forth in this Contract into Signing Bonus. If Club exercises its right(s) to convert such Paragraph 5 Salary and/or Roster Bonus(es) as provided herein, Club shall use the same form of "Signing Bonus" Addendum language as stated in this Contract except that (i) such converted Paragraph 5 Salary shall be payable in 17 equal weekly installments over the ensuing Regular Season and (ii) such converted Roster Bonus(es) shall be payable within 15 days after the applicable Roster Bonus was originally to be paid. Player agrees to execute superseding NFL Player Contract(s) effecting the conversion(s) without receiving any additional consideration from Club.

Player further agrees that the conversion(s) itself (or themselves), if effected, shall constitute valuable and adequate consideration for Player's agreement to execute the new NFL Player Contract(s) and that Player shall be in default under the terms and conditions of this Contract if he refuses or fails to promptly execute the new NFL Player Contract(s) after requested by Club.

7. **REPRESENTATION AND WARRANTY.** By signing this Contract, Player hereby represents and warrants, as of the date of his signature, except as otherwise disclosed to Club, that he has (1) not been charged with, indicted for, convicted of or pled *nolo contendere* to any felony and/or misdemeanor involving fraud or moral turpitude, (2) not engaged in conduct which could subject him to a charge, indictment or conviction of any such offense, and (3) fully and completely disclosed his current physical condition (including any known prior surgeries or medical procedures Player has undergone that impairs, has impaired, or has the potential to impair Player's performance). Player acknowledges and agrees his full and complete disclosure to Club of all information related to this representation and warranty has been relied upon by Club and is a condition precedent and material inducement to Club's entering into this Contract and Club's payment to Player of any and all potential compensation or terms of compensation described herein in the Signing Bonus Addendum as well as in Paragraph 1, 2, 3, 4, 5, and 6. Furthermore, the parties intend and agree that such provisions shall be severable and subject to rescission upon a breach of this representation and warranty without affecting the parties remaining obligations pursuant to this Contract.

8. **ADDITIONAL PLAYER SERVICES.** In addition to the services in the standard NFL Player Contract, Paragraph 2, Player agrees to do five (5) appearances (gratis) for each contract year with out-of-town expenses being paid by Club. Player agrees to sign 400 items of Club memorabilia per year for the sole use of Club for distribution. Memorabilia includes, but is not limited to, football equipment, photographs and licensed apparel of the NFL and the New Orleans Saints Football Club. Player agrees to perform up to a maximum of four (4) hours of service on the New Orleans Saints Internet (home page) each month during the term of this Agreement. Club and Player will mutually agree on dates and times of participation.

9. **PAYMENTS.** Unless otherwise specifically provided herein, any performance bonus amounts earned under this Addendum shall be payable to Player on or before the February 28th following the Regular Season in which the bonus was earned. Upon a contract termination, unless otherwise specifically provided herein, any payments contained in this contract owed to Player by Club that survive the termination of the contract will be paid according to its normal schedule (as if the contract had not been terminated). If such payment is subject to an offset provision, payment will be made within 30 days after the conclusion of the Super Bowl immediately following the season from which the payment was to be made.

10. **JURISDICTION.** As a material inducement for the Club to employ Player's services, Player promises and agrees that any worker's compensation claim, dispute, or cause of action arising out of Player's employment with the Club shall be subject to the worker's compensation laws of Louisiana exclusively and not the worker's compensation laws of any other state. Player further agrees that any claim, filing, petition, or cause of action in any way relating to workers' compensation rights or benefits arising out of Player's employment with the Club, including without limitation the applicability or enforceability of this addendum, shall be brought solely and exclusively with the Louisiana courts or the Louisiana body that has jurisdiction over the matter.

11. **CONFIDENTIALITY.** The financial terms of the Contract and this Addendum shall be strictly confidential except as otherwise expressly provided.

/          /    /
Player    Club    Agent

12. **FULL FORCE.** This Addendum modifies the Contract only to the extent specifically set forth herein. In all other respects the Contract, including any Addenda thereto, remains unchanged and in full force and effect.

13. **NON-TAMPERING CLAUSE.** During the term of the Contract, neither Player nor his representatives will solicit offers from, negotiate with, or enter into any agreement with any professional football team other than Club to perform football-related services. This prohibition applies to all offers, contracts, or negotiations regardless of whether or not the prospective services are to be performed by Player after the expiration of the Contract. Player hereby represents that he is not under contract to any other professional football league, or any other professional football club, and is free to negotiate and sign this agreement.

14. **CLAUSE HEADINGS.** The clause headings appearing in this Addendum have been inserted for the purpose of convenience and ready reference. They do not purport to, and shall not be deemed to, define, limit or extend the scope or intent of the clauses to which they appertain nor any other substantive provision of the Contract.

15. **ACKNOWLEDGEMENT.** By signing this addendum, Player acknowledges that he has read it and has consulted with the advisor of his choice or had the opportunity to do so, understands its terms, and enters into it of his own free will and choice.

Executed this ____ day of April, 2017.

CLUB

_____
Khai Harley

PLAYER

_____
Adrian Peterson

AGENT

_____
Michael J. Lartigue

_____
Player   Club   Agent

Adrian Peterson

8

## Addendum 1 to NFL Player Contract

This is an Addendum to the National Football League ("NFL") Player Contract between ADRIAN PETERSON ("Player") and the New Orleans Saints LA Saints, LLC ("Club") dated April___, 2017 and ending February 28, 2019 (the "Contract"). For the purpose of this Addendum, "Regular Season" shall mean the NFL regular season excluding pre-season and post-season games unless otherwise specifically included.

1. **2017 ONE YEAR CONDITIONAL FULL PARAGRAPH 5 SKILL/INJURY/SALARY CAP GUARANTEE ("GUARANTEE").** Despite any contrary language in this NFL Player Contract, Club agrees for the 2017 contract year only, it will pay Player the full One Million Dollar ($1,000,000.00) salary provided in Paragraph 5, despite the fact that: (1) in Club's sole judgment, Player's skill or performance has been unsatisfactory as compared with that of other players competing for positions on Club's roster, and Player's contract is terminated via the NFL waiver system, or (2) Player, due to death, illness or injury, (but expressly excluding any death, illness or injury that results from Player's engaging in any activity that breaches Paragraph 3 of the NFL Player Contract) is unable, in the sole discretion of Club's physician, to pass Club's pre-season physical examination for the 2017 contract year, and/or unable to perform his playing services for Club, and Player's contract is terminated via the NFL waiver system, or (3) Player is released for salary cap reasons and Player's contract is terminated via the NFL waiver system (provided Player is not in default under the terms and conditions of his NFL Player Contract at such time). In the event this NFL Player Contract is terminated and Player subsequently plays for any professional football organization, Club's obligation under this Guarantee will be reduced by the amount of any and all compensation, including salary, and signing, reporting and/or incentive bonuses, earned by Player from such football organization during the unexpired term covered by this Guarantee. This Guarantee by Club will not apply in any year after 2017, regardless of whether Player is, as of this date, under contract or option to Club for a subsequent year, and regardless of whether Player passes Club's physical examination for a year subsequent to 2017.

   In the event Player, during the 2017 League Year: (i) fails or refuses to report to, practice with or play for Club for any reason other than Player's death, illness or injury, (but expressly excluding any death, illness or injury that results from Player's engaging in any activity that breaches Paragraph 3 of the NFL Player Contract); (ii) fails or refuses to report to, practice with or play for Club due to Player's suspension by the NFL or Club for Conduct Detrimental or for violating any of the NFL's disciplinary policies or programs, including but not limited to the NFL Personal Conduct Policy, the NFL Policy and Program for Substances of Abuse and the NFL Policy and Procedures for Anabolic Steroids and Related Substances; (iii) fails or refuses to report to, practice with, or play for Club due to Player's conviction of, or incarceration for a felony offense; (iv) voluntarily retires from the NFL; (v) voluntarily leaves Club for any reason without Club's consent; or (vi) materially breaches any provision of this Agreement, including, without limitation, any representation or warranty, then, this Guarantee shall be deemed NULL AND VOID. Player will be eligible to earn any remaining portions of his 2017 Paragraph 5 salary on a non-guaranteed basis subject to any applicable fines and/or forfeitures. Player shall not be in violation of this Agreement if Player is unable to pass Club's physical, practice or play with Club as a sole result of an NFL football-related injury sustained while performing his services under this Contract, based upon the sole opinion of the Club's physician, provided that Player has promptly and fully disclosed his physical condition to the Club and promptly undergoes whatever reasonable and customary rehabilitation and treatment the Club directs.

   WAIVER SYSTEM: This Guarantee in no way supersedes or obviates the applicability of the League's waiver system to Player.

2. **ROSTER BONUS.** Player will earn roster bonuses if he meets the requirements set forth in 2.1 below. For the purposes of this provision, inclusion on the Club's (90) Man Roster shall include Physically Unable to Perform, Reserve Injured, and any other roster status whereby the Club retains contractual rights to Player's services except for the following: Non-Football Injury, Did Not Report, Left Squad, Suspended or Retired.

   2.1 **Third (3rd) Day of the 2018 League Year Roster Bonus ("2018 Roster Bonus").** Player will earn a bonus in the amount of Seven Hundred Fifty Thousand Dollars ($750,000.00) if he is a member of the Club's Ninety (90) Man Roster on the third day of the 2018 League Year. The bonus, if earned, will be payable in full within fifteen days after the third day of the 2018 League Year. Player shall be subject to forfeiture of Salary to the maximum extent permitted under Article 4, Section 9 of the 2011 Collective Bargaining Agreement.

3. **2018 PER GAME ROSTER BONUSES.** Player will earn roster bonuses if he meets the requirements set forth in 3.1 and/or 3.2 below.

   3.1 **2018 FORTY SIX (46) MAN ACTIVE ROSTER BONUS.** Player will receive a total of Forty Six (46) Man Active Roster Bonuses not to exceed Four Hundred Thousand Dollars ($400,000.00) based upon the number of games during the 2018 Regular Season player is a member of the Club's Forty Six (46) Man Active Roster. Player will receive an equal installment [Twenty Five Thousand Dollars ($25,000) in the event there are 16 Regular Season games in the 2018 Regular Season] ("Roster Bonus") for each game during the 2018 Regular Season that he is a

____/____/_ML_
Player   Club   Agent

Adrian Peterson 9

member of the Club's Forty Six (46) Man Active Roster. The amount of each Roster Bonus is expressly conditioned upon the Club's total number of Regular Season games for the 2018 season. Under any circumstances, the maximum Player may earn pursuant to this clause for the 2018 League Year is Four Hundred Thousand Dollars ($400,000.00). Each Roster Bonus, if earned, will be paid concurrent with paragraph 5 salary during the season in which it is earned. Player shall be subject to forfeiture of Salary to the maximum extent permitted under Article 4, Section 9 of the Settlement Agreement, dated July 25, 2011.

3.2 **2018 WEEKLY ROSTER BONUSES.** Player will receive a total of Roster Bonuses not to exceed One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00) based upon the number of weeks during the 2018 Regular Season player is a member of the Club's Roster. For the purposes of this provision only, membership on the Club's Roster shall be defined as being on: (a) Club's 53-Man Active/Inactive Roster, (b) the Club's Reserve/Injured List, or (c) the Club's Reserve/Physically Unable to Perform List on the Wednesday preceding each of the Club's 2018 Regular Season Games. (The Sunday of any "Bye Week" of the Club shall count as a game only for the purpose of this paragraph.) Player will receive an equal installment [Seventy Three Thousand Five Hundred Twenty Nine Dollars and Forty One Cents ($73,529.41) in the event there are 17 Regular Season weeks in the 2018 Regular Season] ("Roster Bonus") for each week during the 2018 Regular Season that he is a member of the Club's Roster as defined above. The amount of each Roster Bonus is expressly conditioned upon the total number of weeks for the 2018 Regular Season. Under any circumstances, the maximum Player may earn pursuant to this clause for the 2018 League Year is One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00). Each Roster Bonus, if earned, will be paid concurrent with paragraph 5 salary during the season in which it is earned. Player shall be subject to forfeiture of Salary to the maximum extent permitted under Article 4, Section 9 of the Settlement Agreement, dated July 25, 2011.

4. **2017-2018 LEAGUE YEAR CLUB/INDIVIDUAL PERFORMANCE INCENTIVES.**

4.1 **2017-2018 Individual Performance – Rushing Yards.** For the 2017 and/or 2018 Regular Seasons, Player will be eligible to earn the following amounts based upon the Rushing Yards he achieves:

| 2017-2018 Regular Season Rushing Yards | Amount |
|---|---|
| 750 Rushing Yards | $150,000.00 or |
| 1000 Rushing Yards | $250,000.00 or |
| 1250 Rushing Yards | $750,000.00 or |
| 1500 Rushing Yards | $1,000000.00 |

The maximum Player can earn based upon any one regular season's performance pursuant to paragraph 4.1 above is One Million Dollars ($1,000,000.00). UNDER NO CIRCUMSTANCE SHALL PLAYER EARN MORE THAN Two Million Dollars ($2,000,000.00) pursuant to paragraph 4.1.

Additionally, should any of the preceding incentive thresholds in 4.1 become Likely To Be Earned pursuant to the CBA, dated August 4, 2011 THEN, so as to make the incentive threshold Not Likely To Be Earned, Player must improve over the immediate prior regular season in Rushing Yards in order to earn amounts listed in any of the preceding thresholds.

4.2 **2017-2018 Individual Performance – Rushing/Receiving Touchdowns.** For the 2017 and/or 2018 Regular Seasons, Player will be eligible to earn the following amounts based upon the number of combined Rushing and Receiving Touchdowns he achieves:

| 2017-2018 Regular Season Combined Touchdowns (Rushing and Receiving) | Amount |
|---|---|
| 6 Touchdowns | $250,000.00 or |
| 8 Touchdowns | $500,000.00 or |
| 10 Touchdowns AND Leads NFL in Rushing Touchdowns | $750,000.00 |

The maximum Player can earn based upon any one regular season's performance pursuant to paragraph 4.2 above is Seven Hundred Fifty Thousand Dollars ($750,000.00). UNDER NO CIRCUMSTANCE SHALL PLAYER EARN MORE THAN One Million Five Hundred Thousand Dollars ($1,500,000.00) pursuant to paragraph 4.2.

Additionally, should any of the preceding incentive thresholds in 4.2 become Likely To Be Earned pursuant to the CBA, dated August 4, 2011 THEN, so as to make the incentive threshold Not Likely To Be Earned, Player must

_____/  / ML
Player   Club   Agent

improve over the immediate prior regular season in combined Rushing and Receiving Touchdowns in order to earn amounts listed in any of the preceding thresholds.

4.3 **2017-2018 Club/Individual Performance – Rushing Yards.** For the 2017 and/or 2018 Regular Seasons, if Player achieves 750 or more Rushing Yards during the Regular Season AND Club qualifies for the Playoffs in the same season AND Player plays in Club's Playoff Game, Then Player will be eligible to earn the following amounts based upon his participation in each respective Playoff Game Club advances to below:

| 750 Regular Season Rushing Yards AND Playoffs AND Player Plays in Playoff Game | Amount |
|---|---|
| Club Participates in Wild Card or Divisional Round | $250,000.00 or |
| Club Participates in Conference Championship | $500,000.00 or |
| Club Wins the Super Bowl | $1,000,000.00 |

The maximum Player can earn based upon any one regular season's performance pursuant to paragraph 4.3 above is One Million Dollars ($1,000,000.00). UNDER NO CIRCUMSTANCE SHALL PLAYER EARN MORE THAN Two Million Dollars ($2,000,000.00) pursuant to paragraph 4.3.

Additionally, should any of the preceding incentive thresholds in 4.3 become Likely To Be Earned pursuant to the CBA, dated August 4, 2011 THEN, so as to make the incentive threshold Not Likely To Be Earned, Club must advance further in the Playoffs than the immediate prior season OR Player must improve over the immediate prior regular season in Rushing Yards in order to earn amounts listed in any of the preceding thresholds. For example, if Player rushes for 900 yards during the 2017 Regular Season AND Club only participates in the Wild Card Round AND Player participates in the Wild Card Round Game THEN Player would earn Two Hundred Fifty Thousand Dollars ($250,000.00). Continuing with this example, in order to earn the same incentive threshold for the 2018 season, one of the following must occur: 1. Player rushes for 750 yards during the Regular Season AND Club advances to a game beyond the Wild Card Round AND Player participates in that game OR 2. Player rushes for 901 yards during the Regular Season AND Club participates in the Wild Card Round AND Player participates in the Wild Card Round Game.

The maximum Player can earn based upon any one regular season's performance pursuant to paragraphs 4.1, 4.2, and 4.3 above is Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000.00). UNDER NO CIRCUMSTANCE SHALL PLAYER EARN MORE THAN Five Million Five Hundred Thousand Dollars ($5,500,000.00) pursuant to paragraphs 4.1, 4.2, and 4.3.

Furthermore, if Player earns any of the above amounts pursuant to Paragraphs 4.1, 4.2, and 4.3 for the 2017 Regular Season THEN an equal amount shall be added to the total amount of 2018 Weekly Roster Bonuses listed in 3.2 above. Any escalator achieved pursuant to this paragraph shall not be guaranteed. For example, if Player achieves 1000 Rushing Yards, 5 combined Rushing & Receiving Touchdowns, Club participates in the Conference Championship, and Player participates in the Conference Championship during the 2017 League Year THEN Player will earn Seven Hundred Fifty Thousand Dollars ($750,000.00) AND the amount Player can earn in 2018 Weekly Roster Bonuses shall increase by Seven Hundred Fifty Thousand Dollars ($750,000.00) to a total of Two Million Dollars ($2,000,000.00) ($1,250,000.00 plus $750,000.00). UNDER NO CIRCUMSTANCE SHALL PLAYER'S 2018 WEEKLY ROSTER BONUSES INCREASE BY MORE THAN a combined Two Million Seven Hundred Fifty Thousand Dollars ($2,750,000.00) pursuant to paragraphs 4.1, 4.2, and 4.3.

5. **2018 OFF-SEASON WORKOUT COMPENSATION.** Player will be eligible to receive a bonus ("Off-Season Workout Compensation") in the amount of:

| League Year | Amount of Bonus |
|---|---|
| 2018 | $50,000.00 |

for the 2018 Contract Year for participating in 90% of the Club's off-season workout program and satisfying the Club's reasonable workout requirements for that year, and for Player's timely reporting to and 100% participation in the Club's entire off-season mini-camp(s). The off-season workout program shall include on-site Club authorized rehabilitation due to a football-related injury. For the purposes of this Contract, Off-Season Workout Compensation shall be deemed to include any per diem amounts Player is eligible to earn pursuant to CBA, dated August 4, 2011. Player must be a member of the Club's 90-Man Roster at the start and completion of the Club's off-season workout program to be eligible for the Off-Season Workout Compensation (Unless Player has already fulfilled the participation requirement for the complete program.). The Off-Season Workout Compensation shall be payable to Player in a lump sum payment within five (5) days after the start of the



Player  Club  Agent

Club's first Regular Season game. Eligibility for the Off-Season Workout Compensation shall be determined by records maintained by the Club. In the event that Player does not satisfy the Club's off-season workout program 90% participation requirement, he shall only receive the minimum daily amounts earned pursuant to Article 21, Section 3 of the CBA, dated August 4, 2011. Player shall not be in violation of this Agreement if Player is unable to pass Club's physical and participate in the Club's off-season workout program(s) and off-season mini-camp(s) as a sole result of an NFL football-related injury sustained while performing his services under this Contract, based upon the sole opinion of the Club's physician, provided that Player has promptly and fully disclosed his physical condition to the Club and promptly undergoes whatever reasonable and customary rehabilitation and treatment the Club directs.

6. **AUTOMATIC CONVERSIONS.** Player and Club agree that on one or more occasions and at any time during the duration of this Contract, Club shall have the right, but not the obligation, to (i) convert any portion of Player's Paragraph 5 Salary set forth in this Contract into Signing Bonus, or (ii) convert any portion or all of the Roster Bonus(es), if any, set forth in this Contract into Signing Bonus. If Club exercises its right(s) to convert such Paragraph 5 Salary and/or Roster Bonus(es) as provided herein, Club shall use the same form of "Signing Bonus" Addendum language as stated in this Contract except that (i) such converted Paragraph 5 Salary shall be payable in 17 equal weekly installments over the ensuing Regular Season and (ii) such converted Roster Bonus(es) shall be payable within 15 days after the applicable Roster Bonus was originally to be paid. Player agrees to execute superseding NFL Player Contract(s) effecting the conversion(s) without receiving any additional consideration from Club.

Player further agrees that the conversion(s) itself (or themselves), if effected, shall constitute valuable and adequate consideration for Player's agreement to execute the new NFL Player Contract(s) and that Player shall be in default under the terms and conditions of this Contract if he refuses or fails to promptly execute the new NFL Player Contract(s) after requested by Club.

7. **REPRESENTATION AND WARRANTY.** By signing this Contract, Player hereby represents and warrants, as of the date of his signature, except as otherwise disclosed to Club, that he has (1) not been charged with, indicted for, convicted of or pled *nolo contendere* to any felony and/or misdemeanor involving fraud or moral turpitude, (2) not engaged in conduct which could subject him to a charge, indictment or conviction of any such offense, and (3) fully and completely disclosed his current physical condition (including any known prior surgeries or medical procedures Player has undergone that impairs, has impaired, or has the potential to impair Player's performance). Player acknowledges and agrees his full and complete disclosure to Club of all information related to this representation and warranty has been relied upon by Club and is a condition precedent and material inducement to Club's entering into this Contract and Club's payment to Player of any and all potential compensation or terms of compensation described herein in the Signing Bonus Addendum as well as in Paragraph 1, 2, 3, 4, 5, and 6. Furthermore, the parties intend and agree that such provisions shall be severable and subject to rescission upon a breach of this representation and warranty without affecting the parties remaining obligations pursuant to this Contract.

8. **ADDITIONAL PLAYER SERVICES.** In addition to the services in the standard NFL Player Contract, Paragraph 2, Player agrees to do five (5) appearances (gratis) for each contract year with out-of-town expenses being paid by Club. Player agrees to sign 400 items of Club memorabilia per year for the sole use of Club for distribution. Memorabilia includes, but is not limited to, football equipment, photographs and licensed apparel of the NFL and the New Orleans Saints Football Club. Player agrees to perform up to a maximum of four (4) hours of service on the New Orleans Saints Internet (home page) each month during the term of this Agreement. Club and Player will mutually agree on dates and times of participation.

9. **PAYMENTS.** Unless otherwise specifically provided herein, any performance bonus amounts earned under this Addendum shall be payable to Player on or before the February 28th following the Regular Season in which the bonus was earned. Upon a contract termination, unless otherwise specifically provided herein, any payments contained in this contract owed to Player by Club that survive the termination of the contract will be paid according to its normal schedule (as if the contract had not been terminated). If such payment is subject to an offset provision, payment will be made within 30 days after the conclusion of the Super Bowl immediately following the season from which the payment was to be made.

10. **JURISDICTION.** As a material inducement for the Club to employ Player's services, Player promises and agrees that any worker's compensation claim, dispute, or cause of action arising out of Player's employment with the Club shall be subject to the worker's compensation laws of Louisiana exclusively and not the worker's compensation laws of any other state. Player further agrees that any claim, filing, petition, or cause of action in any way relating to workers' compensation rights or benefits arising out of Player's employment with the Club, including without limitation the applicability or enforceability of this addendum, shall be brought solely and exclusively with the Louisiana courts or the Louisiana body that has jurisdiction over the matter.

11. **CONFIDENTIALITY.** The financial terms of the Contract and this Addendum shall be strictly confidential except as otherwise expressly provided.

_____/   /ML_____
Player   Club   Agent

Adrian Peterson 12

12. **FULL FORCE.** This Addendum modifies the Contract only to the extent specifically set forth herein. In all other respects the Contract, including any Addenda thereto, remains unchanged and in full force and effect.

13. **NON-TAMPERING CLAUSE.** During the term of the Contract, neither Player nor his representatives will solicit offers from, negotiate with, or enter into any agreement with any professional football team other than Club to perform football-related services. This prohibition applies to all offers, contracts, or negotiations regardless of whether or not the prospective services are to be performed by Player after the expiration of the Contract. Player hereby represents that he is not under contract to any other professional football league, or any other professional football club, and is free to negotiate and sign this agreement.

14. **CLAUSE HEADINGS.** The clause headings appearing in this Addendum have been inserted for the purpose of convenience and ready reference. They do not purport to, and shall not be deemed to, define, limit or extend the scope or intent of the clauses to which they appertain nor any other substantive provision of the Contract.

15. **ACKNOWLEDGEMENT.** By signing this addendum, Player acknowledges that he has read it and has consulted with the advisor of his choice or had the opportunity to do so, understands its terms, and enters into it of his own free will and choice.

Executed this ____ day of April, 2017.

CLUB                                                                                                    PLAYER

_____                                          _____
Khai Harley                                                                                         Adrian Peterson


AGENT

_____
Michael J. Lartigue


___/___/___
Player  Club  Agent