

**EMPIRICAL**
Loss Management, LLC

Phone: 405-241-9474
Fax: 405-212-4309

August 24, 2017

**VIA CERTIFIED MAIL – RETURN RECEIPT REQUESTED**
**AND VIA EMAIL**

Mr. Adrian Peterson
C/O Heitner Legal
1736 NE 7th St
Fort Lauderdale, FL 33304

**DECLINATION OF BENEFITS/COVERAGE**

| Re: | Assured | : | Thrivest Specialty Funding II, LLC. |
|---|---|---|---|
| | Insured | : | Adrian Peterson |
| | Certificate No. | : | ▇▇▇▇▇▇▇▇▇▇ |
| | Policy Period | : | June 22, 2016 through March 22, 2017 |

Dear Mr. Peterson:

*As you are aware, we have been retained by Certain Underwriters at Lloyd's, London ("Underwriters") to investigate and adjust a Claim for benefits submitted by you. Underwriters issued Accident & Sickness Permanent Total Disability, Certificate No.▇▇▇▇▇▇▇▇▇▇("Policy"), to the Assured Thrivest Specialty Funding III, LLC and to you as the Insured for the period June 22, 2016 to March 22, 2017. The Policy provides benefits in the event of a Permanent Total Disability (Section A) or Loss of Value (Section B). The Policy does not allow a claim to be made under both Sections A and B at the same time. The Aggregate Limit of Liability is three million ($3,000,000.00) dollars. Your occupation is listed as "NFL Player."*

On June 8, 2017, you submitted a Claim through a Proof of Loss form for benefits under section B of the Policy for Loss of Value (LOV) to Hanleigh Management, Inc. The Proof of Loss indicates that you, while a running back for the Minnesota Vikings were tackled in a game against the Green Bay Packers on September 18, 2016, and sustained a right knee lateral meniscus tear that required surgical repair on September 21, 2016. Underwriters then submitted the claim to Empirical Loss Management, LLC. ("Empirical") on June 12, 2017, for investigation. Empirical sent a Reservation of Rights letter to you on June 15, 2017, advising that the Claim was being investigated and reserved all rights of Underwriters as the investigation continued. An evaluation of the Claim has been completed which included a review of the submitted claim forms, Policy and your NFL Player contract with the New Orleans Saints ("Saints").

**Please send all correspondence to our home office.**

| **California Office** | **Home Office** | **New York Office** |
|---|---|---|
| 23801 Calabasas Road | 750 E Britton Road | 150 Broadway |
| Suite 2025 | Suite 100 | Suite 1200 |
| Calabasas, CA 91302 | Oklahoma City, OK 73114 | New York, NY 10038 |

At this time, we regret to inform you that for the reasons explained below and based upon the information obtained to date, Underwriters have determined that no benefits are payable to you or the Assured for the Claim, pursuant to the Policy terms and conditions.

We direct your attention to the relevant terms and conditions of the Policy as set forth below:

POLICY
**Section B) – Loss Of Value**
**For his** *Aggregate Ascertained Loss*, **up to, but not exceeding the Limit of Indemnity, should the Insured not receive an** *Offer* **from a Professional American Football Team that Totals USD 12,000,000 or more of** *Compensation* **based on a 3 year contract (USD 4,000,000 per year irrespective of whether the contract is paid evenly over the number of years, for the purposes of this policy it is deemed to be paid evenly.) \*or** pro rata **in the event of a short or longer duration contract.**
**Solely and directly as a result of Injury or Illness occurring during the period of Insurance, subject always to the terms, Warranties, Conditions and Exclusions contained herein or endorsed hereon. …**
**Alternatively, should the insured sign a contract of:-**
USD 6,000,000 over 1 year – There is no shortfall as the contract offer is greater than the USD 4,000,000 per year so no benefit will be payable.

PART TWO – DEFINITIONS

2.  *Aggregate Ascertained Loss*

    *Means the difference between the* Offer *as stated in the insuring agreement and the actual* Compensation *included in the largest* Offer *made by a* Professional American Football Team *or pro rata if a shorter or longer term. Noting the maximum payable is dependent upon the length in years of the Actual* Offer.

    *It is understood and agreed that there can be no claim under this Insurance with respect to Section B if the Compensation made by a Professional American football team is greater than or equal to the* Offer*, as stated in the insuring agreement. The amount payable will be dependent upon length in years of the Actual* Offer.

8.  *Compensation*

    *Means money, property, investments, loans, options or anything else of value, whether Or not in cash, regardless of when paid, including, but not limited to,* Salary *and* Signing Bonus *included in an* Offer *made by a Professional American Football*

**Please send all correspondence to our home office.**

| **California Office** | **Home Office** | **New York Office** |
|---|---|---|
| 23801 Calabasas Road | 750 E Britton Road | 150 Broadway |
| Suite 2025 | Suite 100 | Suite 1200 |
| Calabasas, CA 91302 | Oklahoma City, OK 73114 | New York, NY 10038 |

*Team, including* Performance, Roster *and* Reporting Bonuses.

10. <u>*Signing Bonus*</u>
*Means compensation, regardless of when paid, for signing a contract with a* Professional American Football Team *or any other activity not contingent Upon the Insured attaining or surpassing a particular level of performance.*

11. <u>*Reporting Bonus*</u>
*Means Compensation, for reporting to training camp or any other activity not Contingent upon the Insured attaining or surpassing a particular level of Performance.*

12. <u>*Roster Bonus*</u>
*Means Compensation, for making the roster or any other activity not Contingent upon the Insured attaining or surpassing a particular level of Performance.*

13. <u>*Performance Bonus*</u>
*Means Compensation, contingent upon the Insured attaining or surpassing A particular level of performance*

14. <u>*Offer*</u>
*Means a proposal to play Football for a* Professional American Football Team *made to the Insured or his agent/representative within the policy Period or within 15 months thereafter and being after the date of* Injury *Or* Manifestation *of Illness (being the subject of a claim) whether signed And agreed by the Insured or otherwise.*

*In the event that an* Offer *is made that is subject to the completion of a Professional American Football Team Physical;*

    ii)    *If that physical was subsequently failed, then this will not count as an* Offer *according to the terms of the policy*

    ii)    *If the* Professional American Football Team *then reduces the Offer to the player solely due to the findings of the physical, Then the new lower* Offer *will replace the original in all Matters relating to the policy.*

Professional American Football Team *means a recognized Professional American Football team.*

**Please send all correspondence to our home office.**

| **California Office** | **Home Office** | **New York Office** |
|---|---|---|
| 23801 Calabasas Road | 750 E Britton Road | 150 Broadway |
| Suite 2025 | Suite 100 | Suite 1200 |
| Calabasas, CA 91302 | Oklahoma City, OK 73114 | New York, NY 10038 |

In order for benefits to be payable to you under the Policy, you would be required to establish that you sustained an "Aggregate Ascertained Loss" as defined in the Policy as a result of the Offer that you received from the Saints, a recognized Professional American Football team. In April, 2017 you accepted an Offer from the Saints to play professional football for the 2017/2018 and 2018/2019 seasons.

An Aggregate Ascertained Loss is the difference between the Offer stated in the Policy which is $4.0 million per year for a three year contract (total $12.0 mil) or pro rata for a contract that may have a shorter or longer term, and the Compensation that was included in the Offer made to you by the Saints. For example, if you had received an Offer from the Saints to play for three seasons with total Compensation, as defined in the Policy, of $3.0 mil per year and assuming all other conditions in the Policy were met, you would have an Aggregate Ascertained Loss of $1.0 million per year and would be entitled to benefits totaling $3.0 mil. As a further example, if you had received an Offer from the Saints to play for two seasons with total Compensation, as defined in the Policy, of $2.5. million per year and assuming all other conditions in the Policy were met, you would have an Aggregate Ascertained Loss of $1.5 million per year and would be entitled to benefits totaling $3.0 million.

Under the clear and unambiguous language in the Policy, Compensation is defined as and includes, amongst other terms, Salary, Signing Bonus, Performance Bonus, Roster Bonus and a Reporting Bonus. Each of these terms is also defined in the Policy as referenced above.

Under the terms of the NFL contract you entered into with the Saints, the total Compensation that you could earn in each of your two seasons is $6.25 million per season/year or $12.5 million in total for the two-year contract. Because the Offer from the Saints is greater than the Offer stated in the Policy, you have not sustained an Aggregate Ascertained Loss and thus, no benefits are payable to you or the Assured under the Policy.

This denial of benefits/coverage is based upon the information and documents obtained during our investigation of this matter. This denial of benefits/coverage is without prejudice to Underwriters' right to assert any other Policy defenses that exist presently, or that may be applicable upon further investigation. Underwriters further reserve all of their rights and interests under the Policy and at law and do not waive any of the Policy terms, conditions, exclusions and endorsements with regard to this coverage determination. Any further action taken by or on behalf of Underwriters in connection with the Policy shall not be construed as a waiver of any policy terms or conditions, nor of any rights or interests under the Policy. Additionally, no act or omission of any agent, servant or employee of Underwriters shall be deemed to constitute a waiver or estoppel with respect to any of Underwriters' rights or interests under the Policy, at law, or in equity.

**Please send all correspondence to our home office.**

| California Office | **Home Office** | New York Office |
|---|---|---|
| 23801 Calabasas Road | 750 E Britton Road | 150 Broadway |
| Suite 2025 | Suite 100 | Suite 1200 |
| Calabasas, CA 91302 | Oklahoma City, OK 73114 | New York, NY 10038 |

The wording, punctuation and form expressed in your Policy of insurance take precedence over this or any other letter we prepare where excerpts from the Policy are quoted. Please refer to your Policy and applicable endorsements. This letter is not meant to change any wording or meaning in the policy of insurance issued by Underwriters.

If you have any questions or comments regarding the contents of this letter, or if you have any information or documents that would impact upon or cause Underwriters to alter or reconsider their coverage position, please contact the undersigned immediately.

Very truly yours,

*Mary Ann Camp*

Mary Ann Camp
Direct Dial

CC:
Alan Wilmot
Graham Southall via email only, graham.southall@crumpins.com
Dominique Zelaya email only, DZelaya@suresportslending.com

**Please send all correspondence to our home office.**

| **California Office** | **Home Office** | **New York Office** |
|---|---|---|
| 23801 Calabasas Road | 750 E Britton Road | 150 Broadway |
| Suite 2025 | Suite 100 | Suite 1200 |
| Calabasas, CA 91302 | Oklahoma City, OK 73114 | New York, NY 10038 |