

September 25, 2017

**Mathew P. Ross**
(914) 872-7487 (direct)
Mathew.ross@wilsonelser.com

**VIA EMAIL & CERTIFIED MAIL**
**RETURN RECEIPT REQUESTED**

Heitner Legal
215 Hendricks Isle
Fort Lauderdale, Florida 33301
Attn: Alan Wilmot, Esq.

Re:  Assured         :  Thrivest Specialty Funding II, LLC.
     Insured          :  Adrian Peterson
     Certificate No . :  ███████████
     Policy Period    :  June 22, 2016 through March 22, 2017

Dear Mr. Wilmot,

We have been retained by Certain Underwriters at Lloyd's, London ("Underwriters") subscribing to Accident & Sickness Permanent Total Disability, Certificate No. ███████████ ("Policy") to respond to your letter dated September 12, 2017, requesting a review of the denial of benefits for Loss of Value for your client, Adrian Peterson (Insured), as indicated in the Declination Letter dated August 24, 2017, sent to you from Empirical Loss Management, LLC.

In your letter you dispute Underwriters' finding that Mr. Peterson did not sustain an Aggregate Ascertained Loss, because his Offer received from the New Orleans Saints is greater than the Offer stated in the Policy. You suggest that Mr. Peterson's compensation for the 2017 and 2018 seasons totals USD $3,500,000 per season, or USD $7,000,000 in total. You specify that included in this total compensation is Mr. Peterson's base salary of $1,000,000 for the 2017 season, $2,500,000 sign on bonus for the 2017 season, $1,050,000 base salary for the 2018 season, $2,400,000 Roster Bonus for the 2018 season and a $50,000 Reporting Bonus for the 2018 season. You did not include in Mr. Peterson's total compensation, the $5,500,000 Performance Bonus for the 2017 and 2018 seasons because you appear to suggest that same was classified as a "Non-Guaranteed" Bonus.

**After careful consideration, Underwriters' opinion remains unchanged and no benefits are payable to Mr. Peterson, pursuant to the Policy terms and conditions.**

1133 Westchester Avenue • White Plains, NY 10604 • p 914.323.7000 • f 914.323.7001

Albany • Austin • Baltimore • Beaumont • Boston • Chicago • Dallas • Denver • Edwardsville • Garden City • Hartford • Houston • Kentucky • Las Vegas • London
Los Angeles • Miami • Michigan • Milwaukee • New Jersey • New Orleans • New York • Orlando • Philadelphia • San Diego • San Francisco • Stamford • Virginia
Washington, DC • West Palm Beach • White Plains

wilsonelser.com

6690824v.1



While you rely on numerous sports news and social media outlets to support your determination of Mr. Peterson's total compensation for the 2017 and 2018 seasons, your conclusion is misplaced. The wording, punctuation and form expressed in the Policy provided to Mr. Peterson is what is

controlling and determinative as to whether benefits are payable under the Policy; not what any sports news or social media outlet or person may claim is the compensation afforded to Mr. Peterson. It is clear that the plain and unambiguous terms of the Policy control. Here, the Policy was issued to Mr. Peterson in Pennsylvania. When the language of an insurance policy is plain and unambiguous, a court is bound by that language. *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. John*, 630 Pa. 1, 23, 106 A.3d 1, 14 (2014). The definition of Compensation is clear that it includes all Salary and all Bonuses; each of which are specifically and unambiguously defined in the Policy. There is no distinction between what you refer to as "Non-Guaranteed" Compensation and guaranteed Compensation. Specifically, you did not account for the Performance Bonus as part of Mr. Peterson's Compensation for the 2017 or 2018 season because it is "Non-Guaranteed" Compensation, yet, you recognize and include Roster Bonus and Reporting Bonus for the 2018 season, even though such are also "Non-Guaranteed" Compensation.

The Policy does not distinguish between what you consider to be guaranteed versus "Non-Guaranteed". Rather, the Policy makes it clear that Compensation equals non-guaranteed Compensation and guaranteed Compensation. Here, the highest Offer that Mr. Peterson accepted was from the New Orleans Saints which included: Salary, Sign on Bonus, Roster Bonus, Reporting Bonus and Performance Bonus, all of which together provide Compensation that far exceeds $7,000,000. Regardless of what sports news and social media outlets and personnel contend, the Policy is clear and controlling and includes both "Non-Guaranteed" Compensation and guaranteed Compensation.

We direct your attention to the relevant terms and conditions of the Policy as set forth below:

### POLICY

### PART TWO – DEFINITIONS

8. **Compensation**

    Means money, property, investments, loans, options or anything else of value, whether Or not in cash, regardless of when paid, including, but not limited to, **Salary** and **Signing Bonus** included in an **Offer** made by a Professional American Football Team, including **Performance, Roster and Reporting Bonuses.**

10. **Signing Bonus**

    Means compensation, regardless of when paid, for signing a contract with a **Professional American Football Team** or any other activity not contingent Upon the Insured attaining or surpassing a particular level of performance.

11. **Reporting Bonus**

    Means Compensation, for reporting to training camp or any other activity not

6690824v.1



- 3 -

Contingent upon the Insured attaining or surpassing a particular level of Performance.

12. **Roster Bonus**

    Means Compensation, for making the roster or any other activity not Contingent upon the Insured attaining or surpassing a particular level of Performance.

13. **Performance Bonus**

    Means Compensation, contingent upon the Insured attaining or surpassing A particular level of performance

14. **Offer**

    Means a proposal to play Football for a **Professional American Football Team** made to the Insured or his agent/representative within the policy Period or within 15 months thereafter and being after the date of **Injury** Or **Manifestation** of Illness (being the subject of a claim) whether signed And agreed by the Insured or otherwise.

Based on the plain text and terms of the Policy, it is clear that the term "Compensation" includes not only Salary, Roster Bonus, Sign on Bonus, Reporting Bonus, but also Performance Bonus, which you chose to disregard and leave out of Mr. Peterson's total Compensation simply because media outlets chose not to calculate Mr. Peterson's Performance Bonus when they were reporting on the offer that Mr. Peterson accepted from the New Orleans Saints and because such Bonus is contingent upon Mr. Peterson attaining a particular level of performance. Nevertheless, you acknowledge the Roster Bonus and Reporting Bonus are part of Compensation; even though those are contingent upon Mr. Peterson reporting to training camp or any other activity and for making the roster.

Clearly, the $5,500,000 Performance Bonus is included in Mr. Peterson's Offer and must be included in his total Compensation. Thus, Mr. Peterson's total Compensation for the 2017 and 2018 seasons combined totals $12,500,000. Because the Offer from the Saints is greater than the Offer stated in the Policy, Mr. Peterson has not sustained an Aggregate Ascertained Loss and thus, no benefits are payable to him or the Assured under the Policy.





For the foregoing reasons, Underwriters' decision remains unchanged and no benefits are payable to the Assured or Insured, pursuant to the Policy terms and conditions.

Very truly yours,

Wilson Elser Moskowitz Edelman & Dicker LLP

*[signature]*

Mathew P. Ross

Cc:
Empirical Loss Management, LLC.
Attn: Mary Ann Camp